## Austin Wright v. Henry W. Wilson.

*Evidence: Conveyance: Defective power of attorney.* Where a conveyance was executed, in 1858, by the patentee of the land in dispute, to the plaintiff, reciting that its object was to cure defects in a power of attorney, from the grantor made in 1836, and any defects in the title depending upon deeds executed under and in pursuance of the power (through which plaintiff first went into possession): *Held,* that the deed of 1858, from the patentee to the plaintiff, establishing in him a *prima facie* title, he might have rested till that title was attacked by evidence on the part of defendant. But, plaintiff, having introduced the defective power, and the deeds dependent upon it, for the purpose of showing that the defects in the prior title actually existed as recited in the deed to

WRIGHT *v.* WILSON.

him of 1858: *Held,* further, that this evidence could in no way have prejudiced the defendant, and that its admission, though unnecessary, was not an error of which defendant could complain.

*Witness: Representative of deceased person.* Where a plaintiff, in ejectment, testified under objection as to the fact of possession by a defendant and his deceased wife of certain premises, *held,* that, as the husband was then living, and defending in his own right, as well as of his said deceased wife, the testimony did not fall within the object of the statute *of 1861, p. 161,* prohibiting a party from testifying in relation to matters which, if true, must have been equally within the knowledge of such deceased person.

*Evidence: Certificate of acknowledgment. Conveyance.* The defendant sought to defeat plaintiff's title, by introducing the record of a deed from one Johnson and wife to one Ellis, purporting to convey an interest in the premises. The plaintiff in reply introduced the record of a deed from Ellis and wife to said Johnson reconveying the same land to him "as trustee for and in behalf of Michigan College." Two certificates of acknowledgment were attached to this deed. One of the acknowledgments was by Ellis, and the other immediately under it by his wife. Both were in due form, except that the signature of the justice appeared only at the bottom of the lower of the said certificates, and which did not state the county for which he was justice. Each certificate contained the caption of the state and county. *Held,* that the two certificates of acknowledgment were to be treated as one, and that the caption and signature imported that such officer was a justice. *Held, further,* that if the legal effect of this deed were as claimed, still it was competent evidence, and if not, then the court below should have been required to make such a finding upon its legal effect, and then, if not as claimed by the defendant, he should have excepted to this finding and assigned the error upon that.

*Heard June 2d.    Decided July 13th.*

Error to Hillsdale Circuit.

This was an action of ejectment, brought to recover the possession of certain lands in Hillsdale County.

Upon the trial, the plaintiff produced and offered in evidence the record of a certain patent, purporting to be the record of a patent from the United States to Oliver Johnson, conveying "The east half of section thirty, in township five, south of range four, west" — said patent being dated August 10, 1839.

The said plaintiff then produced and offered in evidence the record of a certain deed, purporting to be the record of a deed from Oliver Johnson and wife to Henry W. Wilson, conveying the same premises before described, said deed bearing date of November 23, 1858, duly acknowledged and witnessed. It also stated the object of said deed, viz: "It being the object of the quit claim deed to correct and supply

the defect of the title to said land, occasioned, or supposed to be, by reason of there being no witnesses to a power of attorney executed by the parties of the first part, with Wolcott Lawrence and his wife, dated September 1, 1836, and recorded in the Registry of Deeds of said County of Hillsdale, in Liber B, p. 217; also arising from the defective execution of a deed from E. P. Champlin to George C. Munro and Ransom Gardner, recorded in said Registry Office, in Book B, at pages 405 and 406."

The plaintiff then produced and offered in evidence the record of a certain power of attorney, purporting to be the record of a power of attorney from Oliver Johnson and wife, and Wolcott Lawrence and wife, to E. P. Champlin, authorizing him to sell and convey the premises with others; which power of attorney had no witnesses, and the certificate of acknowledgment of which, was headed "State of Michigan, County of Monroe, ss.," and it was signed "Norman B. Curtis, Justice of the Peace."

The defendant objected to its introduction for the following reasons:

1. There were no witnesses to its execution.

2. It does not appear to have been properly acknowledged; the person signing the certificate of acknowledgment not appearing to be a justice of the peace of any particular county or state.

3. That the paper not being entitled to record under the laws of Michigan, the record was not evidence for any purpose.

4. That it contradicts, by its recitals, which are binding on those claiming under it, the deed of Johnson and wife to Wilson, heretofore in evidence showing the title in fee to said lands in Lawrence and wife and Johnson and wife.

The court overruled the objections.

The plaintiff then offered in evidence the record of a certain deed from Oliver Johnson and wife, and Wolcott Lawrence and wife, by E. P. Champlin, their attorney, to

WRIGHT *v.* WILSON.

George C. Munro and Ransom Gardner, dated December, 1836, and conveying the said land; one seal being opposite all the names, and no state or county being mentioned in the description.

The certificate of acknowledgment was as follows:

" STATE OF MICHIGAN, } ss.
HILLSDALE COUNTY. }

Before me, a Justice of the Peace, E. P. Champlin, as agent for the within signers of this deed, and acknowledged the same to be his free act for the purposes therein mentioned.

HENRY PACKER,
December 16, 1836.  *Justice of the Peace in and for said County.*"

The defendants objected to its introduction, because

1. There was no authority shown in Champlin to give such deed.

2. It was not properly acknowledged.

3. Was not properly sealed.

4. Was void for uncertainty; no state or county being named in which the land it purported to convey was situated.

5. That not being entitled to record, the record was not evidence.

The court overruled the objections.

The plaintiff then offered in evidence the record of a certain deed from Ransom Gardner to George C. Munro, dated January 24, 1837, conveying an undivided half of the same land, but not describing the state or county.

The acknowledgment was certified in the same form as the Power of Attorney.

The defendant objected to its introduction, because

1. It was not properly acknowledged, and was not entitled to record.

2. It did not show that the person taking the acknowledgment was a Justice of the Peace for any county.

3. It was void, for the reason that it did not show in what county or state the land purporting to be conveyed was situated.

The court overruled the objections.

The plaintiff then offered in evidence the record of a certain deed from George C. Munro and his wife to Henry W. Wilson, dated January 9, 1841, which was executed and acknowledged in the ordinary form, but contained the following reservation:

" The said party of the first part hereby reserves and retains the right of cutting and removing, at any time hereafter, all the cherry, black walnut and white wood trees and logs off and from the southeast quarter of said section number thirty, and the same to be taken and removed within three years from this date."

The defendant objected to its introduction, because

1. It was not properly· acknowledged so as to entitle it to record, and the record was, therefore, not evidence.

2. It was not an absolute deed.

The objections were overruled.

The plaintiff then offered in evidence the record of a deed from George C. Munro and wife to Lydia M. Wright, conveying the lands in question.

The plaintiff then offered to prove by his own oath that he knew the land described in the declaration, that it was on section number thirty, in township number five, south of range number four west, in Litchfield; that he purchased the east half of said section number thirty, January 9th, 1841, of said Munro, and took immediate possession thereof by chopping a fallow, and that he moved on said east half of section thirty about a year after said purchase, and built a house; that the land thus purchased covered the land in dispute in this suit; that he remained in possession of this until January or February, A. D. 1843 or 1844, when the defendants went into possession, and the defendants had remained in possession ever since; that the defendant Lydia

Wright had died since the commencement of this suit, and that the defendant Austin Wright worked the land.

But to the admission of the said Henry W. Wilson as a witness to prove said matters, so far as the same must have been equally within the knowledge of the defendant Lydia W. Wright, deceased, and to allowing said Wilson to testify, by referring to the declaration and the deed to him from Munro, the defendant objected, because said plaintiff could not legally testify to the matters above stated, as they were equally within the knowledge of the defendant Lydia W. Wright, deceased, and because the said witness should not be allowed to read from the declaration and the deed, and thereby adopt the language of the declaration and deed as to dates and description of lands.

The objection was overruled, and plaintiff then called Reuben C. Ames, who being duly sworn, testified that in January, 1859, Austin and Lydia Wright were husband and wife at the time of the commencement of this suit; that the defendants, Lydia M. Wright and Austin Wright, were upon the premises described in the declaration, being on section thirty, township five south, of range four west, Hillsdale County Michigan.

Plaintiff also produced, as a witness, George C. Munro, and offered to prove by said George C. Munro, that he was acquainted with the land in dispute; that he and Ransom Gardner purchased of E. P. Champlin, as agent for Oliver Johnson and Wolcott Lawrence, the southeast quarter of section thirty, township five south, of range four west; that when he purchased he understood the land to be in Litchfield, Hillsdale County, Michigan, and that he subsequently purchased Ransom Gardner's part of said land; that he and Gardner resided in Hillsdale County; that he never owned or claimed any other land on section thirty, township five south, of range four west.

But to the admission of such matters the defendant objected, because it was not proper to give parol evidence

as to the purchase of lands: the deeds themselves, or the record of the same, being the best evidence; and because the defects in the deeds already received in evidence on the part of the plaintiff, could not be cured by parol evidence.

The objection was overruled.

The defendant showed that the land was entered by Johnson, November 2, 1835, and that on January 15, 1836, Johnson and wife quit claimed to John M. Ellis, 960 acres, being an undivided share in this as well as in other lands which were described in the deed, and which contained, as set forth, 3,112.14 acres.

The plaintiff then proved a deed from Ellis to Johnson of the same interest, dated August 6, 1836, which, with the questions arising on it, will be found sufficiently stated in the opinion.

No exceptions were made to the judge's written finding in the cause.

The following are the assignments of error:

1. That, on the trial of said cause, the court admitted in evidence the record of a certain power of attorney, purporting to be from Oliver Johnson and wife and Wolcott Lawrence and wife to E. P. Champlin, dated September 1, 1836.

2. That the court admitted in evidence the record of a certain deed, purporting to have been executed by Oliver Johnson and wife and Wolcott Lawrence and wife, by their attorney, E. P. Champlin, to George C. Munro and Ransom Gardner, dated December 15, 1836.

3. That the court admitted in evidence the record of a certain deed, purporting to have been executed by Ransom Gardner to George C. Munro, dated January 23, 1837.

4. That the court admitted in evidence the record of a certain deed, purporting to have been executed by George C. Munro and wife to Henry W. Wilson, dated January 9, 1841.

5. That the court admitted the testimony of Henry Wilson, plaintiff below in reference to matters which had been equally within the knowledge of Lydia Wright, one of the original defendants to said suit, but who deceased before the trial thereof.

6. That the court admitted the testimony of George C. Munro, under the circumstances set forth in the bill of exceptions.

7. That the court admitted in evidence the record of a certain deed, purporting to be a deed from John M. Ellis and wife to Oliver Johnson, August 6, 1836.

Judgment was rendered for plaintiff below.

*C. I. Walker*, for plaintiff in error.

*C. M. Croswell*, for defendant in error.

CHRISTIANCY J.

The plaintiff below — defendant in error — having introduced the patent from the United States to Oliver Johnson, dated August 10, 1839, and the deed from Johnson to himself, dated November 23, 1858, had thus established full title in himself, and might properly have rested without further evidence, until that deduction of title had been invalidated by the defendant.

But the deed from Johnson to plaintiff, after conveying the land, went on to declare that its object was to cure the defects in a power of attorney and certain deeds undertaken to be executed under and dependent upon it, by which, if perfect, the title would have been derived to the plaintiff without the deed of Johnson directly to him, above noticed. The plaintiff sought to show that defective power of attorney and the deeds depending upon it, for the purpose, as it would seem (for there could be no other), of showing that the defects referred to in Johnson's deed to him actually existed. This testimony, though wholly unnecessary, could

in no way have prejudiced the rights of the defendant below. It was not offered to show that the title had passed by the power of attorney and the subsequent deeds dependent upon it; but for the opposite purpose, to show that such defects existed, in that power and those subsequent deeds, that the title did not pass. Any defects, therefore, which existed in that power or those deeds, were entirely immaterial, and could not in any way prejudice the defendants, as they in no way tended to invalidate the deed executed subsequently by Johnson to the plaintiff himself.

This, therefore, disposes of the first, second, third, and fourth assignments of error. And, as the testimony of Geo. C. Munroe, alluded to by the sixth assignment of error, related only to the chain of title thus admitted and claimed to be defective, and to the description of the land, only for the purpose of showing that one of those defective deeds must have been intended to refer to the same lands claimed by the plaintiff under Johnson's deed to him of subsequent date, the objection to this testimony stands upon the same ground as the objections to the defective power and the defective deeds. Though unnecessary, it could not in any manner have prejudiced the defendant; and there was no error in its admission.

There was no error in allowing the plaintiff to testify to his having gone into possession in 1841, and that the defendants (Wright and his wife) went into possession in 1843 or 1844 and remained in possession ever since, and that the wife died after the commencement of this suit.

This was objected to upon the single ground, that these facts, or some of them, must, if true, have been equally within the knowledge of the deceased wife: and the defendant, Austin Wright, was defending not only in his own right, but as administrator of his deceased wife.

This objection, as is clear from the nature of the testimony of plaintiff, can only refer to that part of his testimony in reference to the two defendants, Austin Wright

and wife, going into and continuing in the possession of the premises.

Without undertaking to decide whether the third section of the act of 1861, prohibiting a party from testifying "in relation to matters which, if true, must have been equally within the knowledge of such deceased person," was intended to apply to facts of this character, which in their nature, must be open and notorious and easy of proof from any source, it is sufficient for the present case to say that, as the defendant Austin Wright, one of the parties to whom the testimony referred, was still living and defending in his own right, as well as that of his deceased wife, we do not think the testimony falls within the object of the prohibition of this statute. Had the testimony referred merely to a conversation with the deceased alone, or to some fact the knowledge of which had been confined to the plaintiff and the deceased, the result might have been different. But the principal object of this prohibition, we think, was to prevent a living party from obtaining an unequal advantage from his own testimony, upon matters known only to himself and the deceased, or better known to them than to others, and of which the deceased party can, of course, no longer speak. Whether the prohibition was intended to go beyond this in any case, it is not necessary here to decide, as it is quite apparent from the evidence and the nature of the case that this matter of taking and holding possession of this land, by the defendant and his wife together, must have been equally within the knowledge of the surviving party, Austin Wright, as in that of his deceased wife; and he was entirely competent to testify in relation to it.

The only remaining questions are those arising upon the admission of the record of the deed from Ellis and wife to Johnson.

The defendant, on the trial, without attempting to deduce title to himself or his deceased wife, but for the purpose of defeating the plaintiff's title under the deed from

Johnson, introduced the record of a deed from Oliver Johnson and wife to one John M. Ellis, dated January 15, 1836 (long prior to Johnson's deed to plaintiff), purporting to convey an undivided interest equal to nine hundred and sixty acres in the land in controversy and in other lands, containing, in all, some three thousand one hundred and twelve acres; and, therefore, as it would seem, purporting to convey somewhat less than one undivided third of the premises in controversy. This record was objected to by the plaintiff below, but admitted; and, as the judgment was in favor of the plaintiff below, these objections need not be noticed.

But the plaintiff, to counteract the effect of this deed, and to show that whatever title it conveyed had been reconveyed to Johnson prior to Johnson's deed to himself, introduced the record of a deed from said Ellis and his wife to Oliver Johnson, dated August 6, 1836, purporting to reconvey the same land to said Johnson, " acting as trustee for and in behalf of the Michigan College, his successor or successors, as trustee or trustees for ever; *habendum* to the said Oliver Johnson and his successors, as aforesaid, in fee simple forever."

The certificate of acknowledgment attached to this deed was in the following words:

STATE OF MICHIGAN, ⎰
               ⎱ ss.
COUNTY OF WASHTENAW. ⎰

Personally appeared before me the above named John M. Ellis, to me known to be the person described as the grantor in the foregoing deed, and acknowledged that he signed, sealed and delivered the same for the uses and purposes therein mentioned as their free act and deed.

Given under my hand this sixth day of August, A. D. 1836.

STATE OF MICHIGAN, ⎰
               ⎱ ss.
COUNTY OF WASHTENAW. ⎰

Personally appeared before me Josephena M. Ellis, the wife of the said John M. Ellis, who being by me examined separately and apart

from her said husband, acknowledged that she executed the said deed freely without any fear and compulsion of her said husband.

Given under my hand this sixth day of August, A. D. 1836.

ERASTUS ROOT,
*Justice of the Peace.*

Root also witnessed the execution by both parties.

This record was objected to, *first,* because the deed did not appear to have been "acknowledged by the said John M. Ellis," the certificate to his acknowledgment not being signed by the justice; *second,* taken as a whole it does not conform to the statute so as to entitle it to be recorded; and, *third,* it does not show that the person taking the acknowledgments was a justice of the peace for any county.

The Circuit Judge held the certificates of acknowledgment to be in effect one certificate only, and the signature at the end of the last as intended to be a signature to both, and that the caption of the certificate and the signature import that such officer was an officer in and for the county named in the caption.

In this we see no error. The strong probability is that the blank for the deed was one which had the acknowledgment of the wife in form separate from that of the husband; and the former being placed directly under the latter, was treated by the justice as in effect but a single certificate, the signature to the last being considered by him as a signature to the whole. The fact that such certificates of acknowledgment are generally made as one, that the blank for the date in the first was filled as in the last and with the same date, and that the justice appears to have signed as a subscribing witness to the execution by both, all tend to confirm this view. And we think the court was entirely right in holding that, when the county is named in the caption of such certificate, and it is signed officially as justice of the peace, the caption, in connection with such official signature, imports that he is such officer in and for the county named in the caption.

But it was further objected to the admission of this record that, "if received in evidence, it conveyed the land to Johnson and his successors *as trustees,* and so throws the title out of the plaintiff."

This case having been submitted to us without either a brief or an argument on the part of the plaintiff in error, we are not entirely certain what particular question was intended to be raised by this objection. We do not, therefore, feel justified in going beyond the questions necessarily involved in the case.

If the legal effect of the deed was, as supposed by this objection, we can see no good reason why the defendant below should object to its introduction; since in that event, the case, so far as related to the undivided interest conveyed by the deed, must have been decided in favor of the defendant, unless the court in his finding should give a contrary effect to the deed. And in the latter event, supposing the defendant's view of its legal effect to be correct, the only error operating to the prejudice of the defendant, would consist in this erroneous finding, and not in the admission of the evidence. The deed was relevant to the issue, as, upon any view of its effect, it tended to show where the title was, and might have been followed by other evidence, tracing it to any party.

To enable the defendant to avail himself of an error of this kind, he should have excepted to the finding, and assigned the error upon that. But no exception was taken nor any error assigned to the finding of the judge, either as to the facts or his conclusions of law. No question, therefore, upon the legal effect of this deed, as vesting the title in the *cestuy que trust* or in Johnson, with power of sale, can be properly raised upon this record.

The judgment of the Circuit Court must be affirmed with costs.

CAMPBELL and GRAVES JJ. concurred.

COOLEY CH. J. did not sit.