# Theodore W. Chambers v. Augustus H. Hill.

*Title to personalty: Administrator: Dealings between decedent and his son.* In a controversy between an administrator and the son of the deceased as to the title to certain personal property formerly owned by decedent and now claimed by the son, much liberality should be indulged in receiving evidence having any legitimate tendency to show what the understanding was between the father in his lifetime and the son regarding the ownership of the property in controversy.

*Evidence: Conversations: Substance: Exact words used.* While a witness testifying to declarations of a party, or conversations, should give the words used if able so to do, yet a general answer, embodying the substance or purport, is not objectionable where that is all the witness can recollect.

*Rulings that do not prejudice.* The striking out of an answer to a specific question, though improper, is held not to be error where the ground of the evidence stricken out is substantialy covered by other testimony in the case, and it does not appear that the party complaining of it was injured by the ruling.

*Evidence: Matters equally within knowledge of decedent.* In a suit between an administrator and a son of the deceased, involving the title to personal property claimed by the administrator to belong to the estate, the son is precluded by the statute (*Comp. L. 1871, § 5968*) from testifying as a witness to conversations between himself and his father in the lifetime of the latter, as being matter equally within the knowledge of the deceased.

*Evidence: Rebuttal: Negative testimony.* A witness having testified to a material conversation in the family of the deceased, it is not competent in rebuttal thereof to call a neighbor to testify merely to having never heard such a conversation in the family; such negative testimony has no positive legal value.

*Father and son: Promise to support: Transfer of personal property: Testamentary gifts.* An arrangement between father and son for an immediate and actual transfer of personal property by the former to the possession and control of the latter, in consideration of his undertaking to support and to provide for his parents, will warrant the son, if he has performed on his part, in detaining and claiming title to the property upon his father's death, and as against the administrator; and in a controversy over the title between such son and administrator, there being evidence tending to establish such an agreement and performance, it is held error to put the case to the jury as one involving a promise of a testamentary gift, instead of a present sale.

*Heard June 20.    Decided October 13.*

Error to Kalamazoo Circuit.

This is trover, brought by Hill, as administrator of the estate of John A. Chambers deceased, against a son of the deceased, for the conversion of certain stock, grain and farm-

ing implements which the plaintiff claimed belonged to his intestate, and the son claimed as his own.

*Severens, Boudeman & Turner*, for plaintiff in error.

*May, Buck & Powers*, for defendant in error.

COOLEY, CH. J :

When this case was brought to our attention before *(Hill v. Chambers, 30 Mich., 422)*, we endeavored to indicate rules which should govern on a new trial, and after a careful review of the present record, we are satisfied that in the main the circuit judge has kept within them.   In a few instances it is possible that he may have been too liberal in admitting evidence that could have only a remote bearing on the controversy; but as we showed on the former occasion, the case is one in which the court should be very liberal in receiving evidence that can have any legitimate tendency to show what was the understanding of the parties regarding the ownership of the property in controversy. In some cases we think evidence which was excluded might properly have been received; but we have not been able to satisfy ourselves that any to which the defendant had a clear legal. right was shut out, or that he was injured by any ruling in that regard.   Some irrelevant evidence was received under objection, but not of a character to be prejudicial.

Mrs. Bixby, a witness for the defendant, having testified to living in the family of the intestate for a short time, was asked the following question: "How did the intestate generally speak about the ownership of the property, if you heard him say any thing about it?"   To this the reply was: "As being Theodore's,—the defendant's."   On motion of the plaintiff, this evidence was stricken out without any reason being assigned.   In this court it is said the ruling was right, because the answer only gave the conclusion of the witness from what she heard, and did not give what the intestate

said. This suggestion has no force. The witness should certainly have given the words of the intestate if she could do so, but the general answer was not objectionable, and might have been the only one she was able to give. That the intestate spoke of the property as his son's, was a fact which she might know and testify to, without being able to repeat the words or any of them; the main fact would be likely to impress itself upon the mind, while particular expressions might not be noted or retained.

But the ruling could not have prejudiced the defendant. The same witness was allowed to state that the intestate told her Theodore was coming home to take care of him and his wife, and that they were going to turn over all the property to him; and that after Theodore came there, the intestate told her he had given Theodore all his property. Also that she heard conversation in the family in regard to the ownership of the property,—as to its being Theodore's,—and that he was to furnish for them and provide for them. This seems substantially to cover the ground of the evidence which was stricken out; and as the defendant was not restricted in his examination into particulars on this subject, it is impossible to suppose he was injured by the action he complains of.

On the part of the plaintiff evidence was given that the defendant at one time in 1869 talked with his father and mother about leaving the farm and going south, assigning for a reason that the family was too large, and that he was told by his father to go if he wanted to. The defendant subsequently took the stand, and was asked if he made any such statements. This question was ruled out, on the ground that it called for facts which must have been equally within the knowledge of the intestate, and was therefore inadmissible under the statute of 1861, which, in allowing parties to testify generally, prohibits their doing so "in relation to matters which, if true, must have been equally within the knowledge" of the deceased person. In *Wright v. Wilson,* *17 Mich., 192, 201,* it was said that "the principal object

of this prohibition, we think, was to prevent a living party from obtaining an unequal advantage from his own testimony upon matters known only to himself and the deceased, or better known to them than to others, and of which the deceased party can of course no longer speak." In the same case it was decided that the statute would not preclude the surviving party testifying to matters of public notoriety, such as the occupation of land, notwithstanding the deceased party might have been equally cognizant of the same facts. This case is not of that nature. Although the alleged conversation, if it took place as was testified, may have been heard by third parties, yet as it took place between the defendant and his father as parties concerned, and related to their own business, it is reasonable to assume that the facts concerning it were better known to them than they were to others. It was reasonable and proper, therefore, that as one party was silent in death, the party claiming adversely to his representatives should be equally precluded from giving testimony on his own behalf.

Following this exclusion, Mrs. Bixby was again called, and asked if she heard any conversation in the family concerning Theodore going south. This question was objected to and ruled out. The reason probably was, that it was merely negative testimony, and could have no reasonable tendency to show that the alleged conversation did not take place. Had the witness lived in the family at the time, the proposed evidence might have had some value, especially as the subject was one of high importance to the parties concerned, and if spoken of at all would have been likely to be discussed more or less by all the family. But the fact that a matter of family concern is not talked about before the neighbors, is no evidence that it is not talked about at all; and negative evidence of the character proposed has positively no legal value whatever.

We deem it important to notice but one other ruling, and that, unfortunately, renders it necessary that the case should be remanded for another trial. The circuit judge

instructed the jury that if they should find that the intestate promised the defendant that if he would take care of him and his wife while they lived he should have the property after their death, or after they had done with it, but that such personal property was not actually transferred to defendant in the lifetime of the intestate, the promise would be no defense to the suit. Also "if you find that the defendant has failed to establish the fact of an absolute transfer of the property, but that the agreement entered into between the parents and son was that the defendant should have the property that should be left after the parents deceased, then such arrangement between them would not transfer the personal property in question, but would be utterly void in this respect, and would constitute no defense in this case."

Of this instruction we remark that,

1. It ignores the question, which was a vital one in the case, whether the property in dispute ever belonged to the father at all; whether, if it were not Theodore's, the title was not in the mother, who owned the farm, in which case the action of trover by the father's administrator must fail, irrespective of any other defense; and,

2. It assumes that there was evidence in the case that the arrangement between the parties was, that the title should pass to the son only on the death of the survivor of his parents. Had there been such evidence, the circuit judge would have been correct in instructing the jury that the arrangement, if the father was owner of the property, would be no defense to the action; not for the reason stated by him, that the arrangement would be void, but for the reason that the time had not arrived when Theodore's title under the arrangement, which would be in effect a purchase, was to vest. But we do not find that the evidence tended to show such an arrangement as the instruction supposed. The defendant planted his defense upon an agreement for an immediate and actual transfer of the property to his possession and control, in consideration of his undertaking to

support and provide for his parents; and it was such an agreement that his evidence tended to establish. If he made out the agreement, he was entitled to a verdict; if he did not, and the jury were satisfied the property belonged to the father at the time of his decease, the verdict should have been for the plaintiff. The instruction which was given seems to us calculated to mislead the jury, by suggesting to them that the evidence tended to show what it did not,—a promise of a testamentary gift, rather than a present sale,—a suggestion the more likely to be misleading from the fact that, even under the defendant's claim, the consideration for the property would not fully be paid until the father's death, so that the transaction, though not intended to be testamentary in its nature, would still be sufficiently like it to render the suggestion plausible. We cannot avoid feeling that this instruction may have been mischievous, not only in what it omitted, but also in what it suggested, and though possibly in any case the verdict should have been what it was, we think the defendant is entitled to a new trial.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.