## JOHN DOWNEY v. FRANK D. ANDRUS, ADMINISTRATOR.

*Finding—Delivery of money is evidence of payment—Exclusion of testimony that could be disputed only by deceased party.*

A finding of facts is not merely a narration of evidence, but must determine what is proved.

Payment or delivery of money from one person to another is not of itself evidence of a loan, but rather of the payment of a debt.

The rule that a surviving party may not testify to facts known only to himself and the decedent applies to a case where it is sought to introduce such testimony to supplement that of other persons insufficient in itself to establish a case.

Error to Wayne. Submitted Jan. 23. Decided Feb. 11.

APPEAL from allowance by commissioners in probate. Claimant brings error.

*Charles E. Miller* and *H. A. Chaney* for plaintiff in error.

43 MICH.—9.

*Maybury & Conely* for defendant in error, as to the exclusion of testimony known equally to a deceased party and to one else, cited most of the cases reviewed in the opinion by the court.

GRAVES, J. The plaintiff in error filed a claim against the estate of his mother, Mrs. Downey, for $138, money lent to decedent. The commissioners allowed $100, and the administrator appealed. In the circuit court the case was referred, and the referee reported in favor of the estate and the claimant brought error.

No exceptions were taken to the finding of the referee and no question rests upon it. The only fact ascertained and reported is contained in the general conclusion. What precedes is a mere narration of evidence, and not determinations of the facts proved. *Trudo v. Anderson* 10 Mich. 357; *Thomas v. Sprague* 12 Mich. 120; *Danaher v. Ward's Estate* 40 Mich. 300; *Yelverton v. Steele* id. 538.

The point raised relates to a ruling by the referee excluding certain evidence, and it comes up on a bill of exceptions by him, settled pursuant to the statute. To support his claim the plaintiff in error called Mrs. Armstrong, who testified that she had seen decedent, but was not particularly acquainted with her, but was well acquainted with the claimant, who was her husband's friend; that she had known him about seven years; that some six or seven years ago, and prior to her marriage with Mr. Armstrong, that gentleman, herself and her little girl were accustomed to take long walks together, and on one of those occasions they visited claimant's house; that she could not fix the date precisely, but recollected it was in the spring, and that there was snow on the ground; that claimant then gave decedent some money; that the two were talking about some shingling and the doing of some other work on the place. Claimant said to decedent that would be a hundred dollars, and that would about settle the matter, he supposed; that in the conversation there was something

said about a barn and a fence, and some other little building; that no one else was present except the persons above named, and that Mr. Armstrong had since died; that on the occasion referred to she saw money pass, but could not tell how much there was, until subsequently informed by the claimant that the sum was one hundred dollars; that her best recollection was that claimant said, when he handed the money to decedent, that there was a hundred dollars.

The daughter referred to by the last witness was then called by the claimant. She was about nine or ten years of age at the time of the occurrence in question, and she swore she never saw decedent at any other time; that she heard some talk between claimant and decedent not exactly remembered; that decedent asked for some money and claimant gave it; that she, the witness, paid little attention, and could remember nothing further.

The claimant proved by another witness some remarks of decedent at other times, but it is not necessary to notice them. The foregoing testimony of Mrs. Armstrong and her daughter is a sufficient preliminary for the exposition of the question. There is nothing further from any one, aside from the surviving actor, to shed light upon the transaction between the claimant and decedent on the occasion described by Mrs. Armstrong, or to explain or define its true character.

The others having been examined, the claimant took the stand, and after testifying that he was decedent's son and was present at the conversation testified about by Mrs. Armstrong and her daughter, was then asked by his counsel to state what occurred on that occasion.

This was objected to as within the prohibition of the statute (Comp. L. § 5968, as amended in 1875; Pub. Acts 1875 p. 184), in regard to the right of surviving parties to testify in certain cases.

Claimant's counsel explained by saying that it was proposed to show by the claimant, as a witness in his own behalf, that on the occasion described by Mrs. Arm-

strong and her daughter he lent to decedent the one hundred dollars sought to be recovered in this case. The referee sustained the objection and excluded the offered testimony, and this ruling presents the only question in the record.

In opposition to the referee's decision it is urged that the purpose of the statute is to prevent a claimant from testifying in cases where, if he could be contradicted at all, he could be so only by the decedent, if living; and that where it appears there were others present at the transaction who might contradict the claimant, in case of his testifying falsely, the statute is not applicable, and *Wright v. Wilson* 17 Mich. 201, is cited.

It is then contended that when the claimant was offered as a witness, an assumpsit from decedent to claimant, or in other words a loan of $100 had been fully proved by Mrs. Armstrong and her daughter, as having taken place in their presence, and hence that there was no room for saying that it was necessary to exclude the claimant in order to keep him from gaining the unequal advantage which it is the purpose of the statute to guard against. There may be ground perhaps for questioning this logic.

The referee heard all the evidence of Mrs. Armstrong and her daughter, and all the evidence offered by the claimant except his own testimony, and the estate submitted no evidence, and on all this evidence for the claimant, including the testimony of Mrs. Armstrong and her daughter, the referee found against the claimant. This finding is upon this record conclusive. How then say that the evidence of this lady and her daughter proved the claim? Upon what theory may the record be so impugned?

Again, if, as contended, those witnesses did fully prove the claim, what need was there for the cumulative testimony of the claimant, the surviving party to the transaction? And how could he have been injured by being denied permission to give further testimony to a fact which was already "*fully*" proved?

The record suggests a deeper meaning for the rejected offer than is actually expressed. There is room for inferring that it was felt that whether the legal construction or necessary conclusion in point of law was to be in favor of the claimant, and to the effect that the transaction amounted to a loan, or whether, on the contrary, such construction or conclusion was to be adverse, depended on whether the description of the transaction should be confined to the vague glimpse given by Mrs. Armstrong and her daughter, or should include matters from the claimant sufficient to make out a case of loan, and which if true, were known to no one except decedent and himself.

If the supposed impression was really entertained, and it was apprehended that the testimony of Mrs. Armstrong and her daughter would not support an inference of law that the claimant on the occasion mentioned loaned one hundred dollars to his mother, it was well based.

Giving to the vague and uncertain statements of these witnesses the most force they will bear in the claimant's favor, and it is impossible to gather from them anything further than that decedent asked claimant for money and that he handed her $100. From such facts the law will not infer a loan. The payment or delivery of money by one to another, without some other circumstance to qualify the meaning of the fact, does not import a loan, but the payment of a debt. *Welch v. Seaborn* 1 Starkie 474; *Cary v. Gerrish* 4 Esp. 9; *Aubert v. Walsh et al.* 4 Taunt. 293; *Egg v. Barnett* 3 Esp. 196; *Boswell v. Smith* 6 Car. & P. 60; *Bogert v. Morse* 1 Comst. 377; *Sweet v. Barney* 24 Barb. 533; *Bowers v. Johnson* 49 N. Y. 432; 1 Greenleaf's Ev. § 38; 1 Cowen & Hill's N. 296;

The case was, therefore, one where the presence of third persons on the occasion of the fact in question, was immaterial. Mrs. Armstrong and her daughter were not cognizant of the vital matters to make out a cause of action, and not in a position to set the case right if

misstated or misinterpreted by the surviving party to the transaction, and who alone could state sufficient to support the claim. The essential facts alleged to have existed were not known to them, and if true, could only have been known to claimant and decedent, and the fact that these third persons were physically present could not put the estate on equal terms with the claimant. For the purpose of the question involved they might as well have been absent, and to have allowed the claimant to testify because of their casual presence, would have given him the same "unequal advantage" the statute was designed to prevent.

On a retrospect, we think the course of decision fully supports the ruling made by the referee, and that the effect of *Wright v. Wilson* supra, and *Chambers v. Hill* 34 Mich. 523, is in particular directly in favor. It may be expedient to take a glance at the several cases.

In *Campau v. Van Dyke* it was decided to be inadmissible for Campau to show, by his own testimony, Van Dyke's assurances to do him justice as a reason for his failure to sue during Van Dyke's lifetime; as such facts, if true, must have been equally within the knowledge of both. 15 Mich. 371 380.

*Kimball v. Kimball* was the case of a claim by the son against the father's estate. The circuit court held that the statute did not forbid a party from testifying to transactions within the knowledge of the deceased, provided his own knowledge respecting the transaction was superior in degree or extended to particulars the deceased may not have known. This was deemed an incorrect construction, and the view taken was that if the respective parties alike had knowledge of the facts, the survivor could not testify, notwithstanding any difference there might have been in the degree of their knowledge; and it was remarked that it was the design of the regulation that one party should not be allowed to give his version of a transaction within the personal knowledge of both,

when death had precluded the other from being heard. 16 Mich. 211 213 et seq.

*Wright v. Wilson* supra, was ejectment, and it was held competent for the plaintiff to testify as to defendants' going into possession, and there staying, although one of the defendants was dead, and the facts in question must have been equally within her knowledge. The defendants were husband and wife, the action having been brought in form against both. In speaking of the circumstances which might take a case out of the reason of the statute, though within the words, it was observed that one of the defendants was still living and possessed of the same means of knowledge as the deceased defendant, and that the transaction, instead of being mere conversations between the parties, consisted of personal acts which were open and manifest to everybody. But lest inferences should be drawn of a purpose to abridge the operation of the statute, and give it a construction more narrow than was intended, it was observed further that if the testimony had been directed to a conversation with the deceased alone, or to some fact, the knowledge of which had been confined to the plaintiff and the deceased, the case might be different. That the principal object of the prohibition was to prevent a living party from obtaining an unequal advantage from his own testimony upon matters known only to himself and the deceased, or better known to them than to others, and of which the deceased party can, of course, no longer speak.

In *Moulton v. Mason* the administratrix sued to recover for goods alleged to have been sold by decedent. Proof was given by plaintiff that the parties made an inventory which was recorded in defendant's handwriting, and that shortly before his death decedent got it and had it copied, and told defendant why he wanted it, and there was proof identifying the copy. An offer was made to prove by defendant's testimony that the paper produced by the plaintiff was not a copy of the inventory or of any inventory of goods ever bought by defendant

of the decedent, or of any inventory ever made by him at all, or which he ever assisted in making, and moreover that he never had in his possession any book containing an inventory of which there was a copy. The evidence was excluded as within the prohibition of the statute. It appeared that whilst the essential facts were within the knowledge of decedent and defendant, they were also within the knowledge of others and provable by them, and it did not appear that the copying was done in the presence of either, and the whole controversy was about the correctness of the copying. It was suggested as questionable whether the statute had any reference to. written documents intended to supersede evidence resting in memory and capable of perversion. But passing that, it was ruled that the exclusion was erroneous, and that where representatives have the means of proving the existence and contents of a document, and take. it on themselves to do so by independent evidence, as in the present instance, the case is not within the mischief of the law and not covered by the provision. 21 Mich. 364.

In *Cook v. Stevenson* 30 Mich. 242, the court sustained the rejection of an offer of the defendant to testify that the contract between himself and decedent, which was oral, differed from that set up in the declaration. It was ascertained that the fact, if true, was known only to the parties.

' *Wheeler v. Arnold* id. 304: There the facts related to what had been done in the absence of decedent and to some matters of value, and of the resulting cost of certain items of transportation of which decedent had no personal knowledge. The statute was held not to apply.

' *Van Wert v. Chidester* 31 Mich. 207: Complainant asked to have his deed declared a mortgage, and the record contained complainant's history of oral transactions with decedent. It was decided that the statute excluded many of them.

*Mundy v. Foster* id. 313: Complainant swore to an

oral arrangement with his late wife, the devisor of defendants, by which he deeded to her upon her promise to will the property to him at her death. In passing on the case it was observed that if not within the literal terms of the prohibition the showing was within its policy and ought not to be allowed.

*Twiss .v. George* 33 Mich. 253. It was decided here that the prohibition of the statute does not reach controversies with third persons acting in their own right as purchasers during the life of the deceased and not taking by *post mortem* estate.

*Chambers v. Hill* 34 Mich. 523 was trover by the administrator of the father's estate against the son, and it was held that an alleged conversation between the father and son concerning the title, even if it occurred and was exposed to the hearing of third persons, could not be testified to by the son without violating the statute; and in explanation it was observed that as what was said took place between the father and son, and related to their business, it was reasonable to assume that the facts concerning it were better known to them than they were to others, and that it was reasonable and proper, therefore, as one party was silent in death, that the party claiming adversely to the representative should be equally precluded from giving testimony in his own behalf.

*Schratz v. Schratz* 35 Mich. 485. This was a claim against an estate. The decedent died in Germany seized of a city lot in Detroit, and the claimant had taken charge of it under a written power. He presented a claim which embraced an item for a tombstone and another for a fence, and the heirs resisted the demand. He was allowed by the court below to testify that he had explained the charges by letter to the decedent in his lifetime and received replies which showed that decedent fully understood what was being done; that no copies of the letters written had been kept, and that the

replies had been lost or destroyed. The evidence was held to be inadmissible by reason of the statute.

*Jones v. Beeson* 36 Mich. 214. In this case various questions were ruled out by the circuit judge as forbidden by the law in question, when it was plain that part of them at least were wholly outside of the prohibition, and it did not affirmatively appear that any of them were subject to it. The particulars do not require statement.

*Harmon v. Dart* 37 Mich. 53. The administratrix sued Dart, as survivor of the law firm of "Dart & Wiley," for the proceeds of securities alleged to have been lodged by decedent in his lifetime with the firm. The defense set up that the securities were left under an agreement between decedent and the firm that the latter should have half of the amount they should collect, and should have a further allowance on account of another matter, and that the amount to be paid over had been rendered. Dart was allowed to swear to the arrangement between his firm and decedent, although it must have been known, if made, to no one except the original parties. It was decided that the admission of the testimony was improper.

In *Ward v. Ward* id. 253 the statute was held not to apply to a transaction between the surviving party on the one side and an agent, who is still living, of the other party, since deceased, on the other; and where two third persons were present and the decedent was not.

*Lee v. Wisner* 38 Mich. 82. Wisner was surety on a bond given by Dillingham as collector, and subsequently Dillingham and Lee gave Wisner their bond to indemnify him. The government recovered against Wisner on the first bond, and Dillingham died. Wisner sued Lee on the second bond for indemnity. This court decided that the statute did not preclude evidence of interviews between Lee and Wisner concerning their respective interests, whether before or after the date of the bond.

*Howard v. Patrick* 38 Mich. 795. The plaintiff, a daughter of decedent, Joseph Pardee, and administratrix of his estate, sued defendant, a son of decedent, upon

the claim that he had converted cattle belonging to the estate. He contended that at and for some time prior to his father's death he was in partnership with his father in the business of dealing in fat cattle, and that the cattle referred to belonged to the firm. The case decided that by reason of the statute it was not competent for plaintiff to swear to statements made to her by defendant to the effect that he was not a partner, but that it was not objectionable for Mrs. Evans, another daughter of decedent, to testify to acts and declarations of defendant subsequent to decedent's death, showing defendant's conversion of the cattle, inasmuch as she had previously assigned her interest.

*Rust v. Bennett* 39 Mich. 521. This case decides that in a suit brought on behalf of the estate of a deceased person, to which a private corporation is defendant, a corporator may testify in behalf of the corporation to facts which, if true, were equally within the knowledge of the deceased; that in contemplation of law the corporator is not to be confounded with the corporation.

*McKeown v. Harvey* 40 Mich. 226 decides nothing of importance on this question.

After this tedious reference it is only necessary to say that the cases demonstrate the correctness of the ruling made by the referee. The excluded offer was, in substance, to make out a case by the claimant's statements of certain facts which were known only by himself and decedent, and the claimant's right to swear to these facts is attempted to be defended on the ground that third persons were present, but who, after all, had no knowledge of these facts, and were not interested in the transaction, or apparently regarded by the immediate parties as persons to whom they were minded to explain the business relations between them as mother and son.

There is no error, and the judgment is affirmed with costs.

The other Justices concurred.