## FARLEY *v.* FARLEY.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

    In a suit by a husband for divorce on the ground of extreme cruelty, evidence that defendant falsely charged plaintiff, in an affidavit, for the purpose of securing his indictment, with feloniously conspiring with another to evade the selective draft, and that she spread false and malicious propaganda against plaintiff as regards his patriotism and loyalty, *held*, sufficient to justify a decree in favor of plaintiff.

2. SAME—ALIMONY.

    Although plaintiff was indorser on the notes of corporations in the aggregate of about $117,000, and owed several thousand dollars of personal debts, and his total assets were only slightly over $86,000, where his income had been such that over $1,000 was required annually to pay his income tax, on appeal an award of $5,000 alimony to defendant is *held*, to be insufficient and is increased to $10,000.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J.    Submitted January 5, 1923. (Docket No. 46.)    Decided March 23, 1923.

On husband's prospects as basis for alimony, see notes in 4 L. R. A. (N. S.) 909; 6 A. L. R. 192.

Bill by Clarence J. Farley against Etta Farley for a divorce. From a decree for plaintiff, defendant appeals. Modified and affirmed.

*Charles E. Ward,* for plaintiff.

*Jewell & Raymond,* for defendant.

CLARK, J. Defendant has appealed from a decree for divorce. The parties were married in December, 1913, and separated nearly four years later. They have no children. Plaintiff filed a bill for divorce in April, 1918, on the ground of extreme and repeated cruelty. In July, 1918, after answer and hearing, the bill was dismissed. Three years later the present bill was filed. It sets up new ground of extreme and repeated cruelty that defendant had made a false affidavit for the purpose of procuring the indictment of plaintiff for his having unlawfully and feloniously conspired with another that plaintiff should evade the requirements of an act of congress and the regulations of the President respecting selective service. The bill also charged the spreading and the causing to be spread of false and malicious propaganda against plaintiff as regards his patriotism and loyalty. There are over 300 pages of testimony relating principally to the claimed activities of defendant and her brother in this regard. Space forbids a review of such testimony. Plaintiff was indicted. The indictment was quashed. The matter was given publicity. Plaintiff says that he has been injured in his business and has suffered shame and humiliation and mental anguish. He was called to the service and at the time of his honorable discharge had been commissioned second lieutenant. A careful reading of the record satisfies us that the trial judge was right in stating in an opinion filed:

"Plaintiff has established by a preponderance of the evidence sufficient acts of cruelty charged in his

present bill of complaint to entitle him to an absolute divorce from defendant. These acts of cruelty consist in the making of the affidavit in evidence (defendant's affidavit). * * *

"It was, in my judgment, voluntarily and unnecessarily made and contained statements purporting to be facts which were not true and made to injure, degrade and humiliate plaintiff.

"I am satisfied defendant made this affidavit intending that it should be used against plaintiff, and made it to be used with other alleged facts that were to be furnished by her brother, Harry, through certain investigators, to the United States district attorney as the basis of an indictment to be brought against plaintiff charging him falsely with unlawfully evading the selective service regulations of the government in 1917 and 1918 and with a conspiracy with one Howard F. Johnson and others to commit an offense against the government of the United States as charged in a certain indictment against plaintiff in March term of the United States district court for the western district of Michigan, southern division.

"Defendant's activities in other ways against plaintiff during the time plaintiff was under investigation respecting the charges against his loyalty to his government in 1917 and 1918 were, in my judgment, of a character properly characterized as extreme cruelty."

In finding ground for divorce we think the opinion of the trial court is sustained by authority. *Whitmore* v. *Whitmore*, 49 Mich. 417; *Menzer* v. *Menzer*, 83 Mich. 319, 321 (21 Am. St. Rep. 605); *Campbell* v. *Campbell*, 149 Mich. 147 (119 Am. St. Rep. 660); *Palmer* v. *Palmer*, 45 Mich. 150 (40 Am. Rep. 461); *Delor* v. *Delor*, 159 Mich. 624.

Defendant complains of the award of permanent alimony which was, in gross, the sum of $5,000. It seems that plaintiff at one time owned shares of stock and other property in an aggregate of about $99,000. But later, he testified, to meet the requirements of a decree against him and certain corporations in which

he was interested and other stockholders, his holdings were adjusted so that at the time of decree he owned as follows:

Stock in the Grand Rapids Dry Goods Company:
| | |
|---|---|
| Preferred ............................... | $19,100.00 |
| Common ................................. | 27,320.00 |
| Liberty bonds ............................. | 650.00 |
| Summer cottage ........................... | 2,100.00 |
| Stock in the Highlands Golf Club............ | 200.00 |
| Two automobiles .......................... | 1,350.00 |
| Contracts (on houses in Grand Rapids)...... | 5,385.44 |
| Equity in farm ........................... | 8,360.00 |
| Notes of Grand Rapids Dry Goods Co......... | 20,000.00 |
| Note of Grand Rapids Dry Goods Co.......... | 2,300.00 |
| | |
| Total .................................. | $86,765.44 |

The corporation named was regarded by plaintiff, it seems, largely as his personal enterprise. He was liable as indorser upon its notes and upon the obligations of other corporations in a sum approximating $117,000 to secure the payment of which much of his property has been pledged. He has personal debts in the sum of several thousand dollars. The evidence covers the financial condition of these corporations. The probability of plaintiff's having to pay the notes so indorsed is discussed by counsel. It was the opinion of the trial judge: "Such indorsements are upon such claims of indebtedness as to make it very certain that such liabilities are more than the ordinary contingent liabilities."

Defendant was employed at the time of the hearing as a stenographer and received $100 per month. But plaintiff's income has been such that sums in excess of $1,000 have been required annually to pay his income tax. The defendant's right of dower in his lands is a considerable item. With due regard for the hazards of plaintiff's business and upon full consideration of his financial affairs, we think the award insufficient. It will be increased to $10,000. Defend-

ant will recover costs of this court including an attorney fee of $500, but plaintiff will have credit for $600 expense money heretofore allowed in this court.

The decree, so modified, is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.