## DE VUIST v. DE VUIST.

DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

On appeal by a wife from a decree granting a divorce to the husband on the grounds of extreme cruelty, where the record shows that, if sufficiently specific acts of extreme cruelty are alleged in plaintiff's bill to satisfy the statute, which is doubtful, the proof was insufficient to sustain them, the decree of the court below will be reversed and the bill and cross-bill dismissed.[1]

[1]Divorce, 19 C. J. § 367.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 3, 1924.  (Docket No. 12.)  Decided October 6, 1924.

Bill by Alphonse De Vuist against Virginia De Vuist for a divorce.  Defendant filed a cross-bill for a divorce.  From a decree for plaintiff, defendant appeals.  Reversed, and bill and cross-bill dismissed.

*James R. Neill,* for plaintiff.

*John C. Alexander* and *Leopold D. Mayer,* for defendant.

SHARPE, J.  The bill of complaint alleges that plaintiff, a widower with two children, 11 and 3 years old, received a letter from defendant, then living in Belgium, and whom he had never seen, proposing that he should "come to Belgium and marry her;" that—

"being desirous of having someone to look after his home and his children, at the suggestion of the said defendant, he sent defendant's transportation from Belgium to Detroit, and shortly thereafter married said defendant."

The following are the allegations of "extreme and repeated cruelty" set up in the bill:

"(*b*) That almost immediately after said marriage, said defendant displayed her discontent and lack of concern in the happiness of his household or in the welfare of his children, and conducted herself in a very disagreeable manner, stating to this plaintiff that she disliked his occupation as a farmer, and demanded that he place all his money and real estate in her name.  That these requests were made most emphatically by the said defendant, and were so insistent that this plaintiff became suspicious of her motive and refused to comply with her request.  Whereupon the said defendant on the 10th day of February, 1922,

deserted this plaintiff, and has remained away from him ever since.

"(c) Plaintiff further represents that the said defendant seems to be possessed of great dislike for his children, and refused to carry out her promises to treat said children in a proper manner and with the affections of a mother."

Defendant denied these allegations in her answer. By way of cross-bill, she averred "acts of extreme and repeated cruelty" on his part. She therein claimed that he "was penurious, stingy and disagreeable;" that when she "wanted a glass of milk to drink, she had to secure the same surreptitiously;" that he refused to allow her "to have any butter for her bread, compelling her to use lard thereon;" that, "shortly after their marriage," he—

"looked the defendant   *   *   *   over, as one would a beast of burden, and with a smack of satisfaction announced to the household that she was good for about twelve years' work in the fields;"

that when his—

"mean, miserly, grasping, stingy soul finally exhibited itself and expressed itself in continual habitual nagging, fault-finding and whining over the consumption of even the barest necessities,"

she "ceased to care for him."

An amended bill of complaint was filed by him, but no proof offered to sustain the additional averments therein. The proofs were taken in open court.

The trial court found "that it was more a marriage of convenience than anything else, and that neither side profited materially therefrom;" that plaintiff had "comported himself as a kind and considerate husband and father;" that, "being of the impression, and so finding," that defendant had "not carried out her part of the marriage contract," he found her to have been "guilty of the greatest cruelty required under our

statute to make out a case," and granted him a decree. From it she appeals.

It is doubtful, indeed, whether any sufficiently specific acts of extreme cruelty are alleged to justify a decree. The parties were married on December 21, 1921, and separated on February 10, 1922. The first thing of which plaintiff complains is that defendant left his home "pretty near the first week," and "was gone two days and two nights without coming home." In answer to a question whether she told him she was going, he answered, "I tell her 'go away;' " that he went to the street car to meet her and "she didn't come home for two days after;" that on another occasion they went to "a kind of restaurant" for supper where "we have good times, there was a lot to drink there and everything," and that, when he asked her to go home, she refused, using insulting language in doing so, and that she did not return to her home for three days. On another occasion,

"She said that I have to sell the property and hand everything over to her, or, otherwise, she don't stay with me, she is going to leave me;"

that "She treated the children very bad." The only illtreatment testified to was that "She grabbed that little boy up and set him on the chair" and said, "You farmer, don't get off this chair any more today," and, finally, that, while he was away on February 10th, she left and did not return. The defendant admitted that she stayed away from home several nights at her sister's, but testified that he consented to her going and that she "never went out without his knowing it;" that the day she finally left he said, "you don't have to come back any more."

The witnesses called by plaintiff were examined by his counsel as to the allegations of defendant in her cross-bill. Their testimony in no way tended to support his charges of extreme cruelty. One of them

testified that "the children called her mamma, and seemed quite affectionate toward her." There was no proof of illtreatment of them by her, other than as testified to by him.

The proof offered by defendant in support of her cross-bill deserves even less consideration. The neighbors all testified that plaintiff kept himself as clean as men do who are working about barns and stables, caring for horses and cattle, and that he was a good provider.

It is apparent that the trouble between these parties arose out of the fact that he was insisting that when spring opened she must assist in the fields and help at outdoor work, and that she said she would not do so.

It would be a travesty upon our laws providing for divorces to permit the decree entered in this case to stand. The duty of a court, when considering such proof, was pointed out by this court in an early day, in *Cooper* v. *Cooper*, 17 Mich. 204:

"The law does not permit courts to sever the marriage bond, and to break up households, merely because parties, from unruly tempers or mutual wranglings, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities, and of unwise selections, and the misconduct which will form a good ground for a legal separation must be very serious, and such as amounts to extreme cruelty, entirely subverting the family relations by rendering the association intolerable. Our statutes do not confine such cruelty to mere physical violence, which is by no means the worst injury that can be inflicted on persons of refined sensibility, but the grievance, of whatever kind, must be of the most aggravated nature to justify a divorce. While the proof shows that these parties lived in very unpleasant relations, it is not clear that matters had proceeded to extremity."

That unfounded accusations of crime or conduct tending to degrade and humiliate and which, if be-

lieved, would cause the loss of friends and the disrespect of acquaintances, may constitute extreme cruelty, has been held in the late cases of *Farley* v. *Farley*, 222 Mich. 459, and *Simon* v. *Simon*, 225 Mich. 645, and the cases therein cited. The charges here made are not unlike those considered in *Watrous* v. *Watrous*, 155 Mich. 78, wherein a decree dismissing the bill was affirmed.

The cause of many of the separations leading to suits for divorce may be traced to marriages consummated with haste and lack of consideration as to resulting happiness. If we believe the testimony of the plaintiff, he invited the defendant to come from Belgium and sent her the money needed for her transportation here before he had seen her. There was no thought on his part of affection for her or a desire to secure a wife possessed of the attributes of heart and mind which would tend to make married life felicitous and happy. The marriage ceremony was to him but the making of a contract whereby he secured the services of defendant to look after his home and children and assist in the work on his farm without expense other than her maintenance. While under our statute (3 Comp. Laws 1915, § 11363),—

"Marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of parties capable in law of contracting, is essential,"

the provisions relative to divorce clearly indicate that the causes which will justify a decree are not dependent alone upon the performance of the legal duty which the one owes to the other under the contract, but rest upon grounds of misconduct which render the marriage relation impossible of enjoyment. It may be safely said that there are few married persons between whom discord does not at some time arise. Trifling disagreements often cause the breaking of engagements, many times to the after regret of the

parties interested. Such disagreements after marriage frequently lead to separations, and are magnified as cause for divorce under the claim that they constitute extreme cruelty. Marriage is not a mere temporary agreement to dwell together for a time for the gratification of desires or the performance of service by one for the other. It is entered into with a view to its continuance through life. The parties may not themselves dissolve it. Neither may the legislature (Constitution, Art. 5, § 32). The courts alone may do so. The laws providing for divorces are entirely different from those relating to the termination of other contracts. The causes therefor are enumerated in the statute. The acts of cruelty relied on must be specifically stated in the bill of complaint (*Dashback* v. *Dashback*, 62 Mich. 322), and must be supported by competent proof before a decree of divorce can be granted. *Le Blanc* v. *Le Blanc, ante,* 74.

A decree will be entered here dismissing both the bill of complaint and cross-bill with costs to defendant.

CLARK, C. J., and MCDONALD, BIRD, STEERE, FELLOWS, and WIEST, JJ., concurred. MOORE, J., concurred in the result.