BRADFORD v. BRADFORD.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.
   Decree of divorce for defendant husband on ground of extreme and repeated cruelty *held*, not supported by evidence showing parties to be possessed with the idea that they must be divorced, but failing to show they are entitled to decree, and that they are bound to keep up a home together for each other's sake and especially for their 7-year-old girl.

2. SAME—SUBSTANTIAL CAUSE.
   A husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation, than are people in other relations of life, as the marriage status is not merely contractual so as to entitle each party to demand the strict letter of the bond but is a relation which will not be dissolved except for grave and substantial causes.

3. SAME—COSTS.
   No costs are awarded where husband's cross bill for divorce is dismissed on wife's appeal, no divorce being granted.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 17 Am Jur, Divorce and Separation, § 425.
[3] 17 Am Jur, Divorce and Separation, § 563.

Appeal from Ottawa; Smith (Raymond L.), J. Submitted April 5, 1949. (Docket No. 13, Calendar No. 44,299.) Decided May 18, 1949.

Bill by J. Frances Bradford against Wilmer Bradford for divorce on ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff for divorce on ground of extreme and repeated cruelty. Decree for defendant. Plaintiff appeals. Reversed and cross bill of complaint dismissed.

*Earl Glocheski,* for plaintiff.

*Leo C. Lillie,* for defendant.

Butzel, J. J. Frances Bradford filed a bill of divorce from Wilmer Bradford, charging him with extreme and repeated cruelty which consisted of his being extremely critical of her and the children, being displeased with their actions, of being of a very nervous and irritable disposition, of creating such disturbances with his critical nagging actions that it became impossible for her and the children to live with him, of threatening her with physical violence and ordering her out of the house causing her and the children to become fearful that he might do them bodily harm. It further alleges that he was contemptuous of everything she did and constantly criticized her cooking, management of the home, the training of the children and on one occasion he left home without provocation and did not return for several months and then he became more critical and contemptuous than before.

Defendant filed an answer denying her allegations. He filed a cross bill alleging that their marriage took place April 11, 1923; that he is 56 years of age and she is 41 years old; that they lived and cohabited together until April, 1947, a period of approximately

24 years. There were 3 children born of such marriage, the oldest 21, the second 19 and the third, a little girl about 7 years of age. He claims that she was guilty of mental and physical cruelty. His specific charges were that she was irresponsible, careless, lax and slovenly in her household and housekeeping; that she constantly complainèd about her home being in Marne, Michigan, a suburb of Grand Rapids, and not nearer the downtown section of Grand Rapids shopping district, and not convenient to transportation at all times of the day and year; that she permitted the children, as well as a guest child, to dirty the woodwork without reprimand and would not listen to any comments or suggestions from him as to their better behavior; that she constantly nagged him when he made suggestions to correct this condition; that she ignored all his ideas and suggestions for bettering their home life and living conditions; that she has maintained no discipline over the children; that she always nags and treats him with contempt and ignores his wishes that his children receive a better education. He further alleged that because of her conduct, and in order to properly perform his work as a mail clerk at the Union Station in Grand Rapids, he was obliged to leave the home at Marne and go to Grand Rapids and rent a room; that he sent her all the money he earned except an amount necessary for his own maintenance; that her conduct and acts were so pronounced and bitter that it almost made a nervous wreck of him and made him so irritable that it was difficult for him to perform his work efficiently. He alleged that he remained in Grand Rapids for 13 months and then returned home with the hope that her conduct would improve, but after a short period of improvement her nagging and complaining increased in intensity and violence. He further charged that she objected to getting his meals for

him because of the irregular hours of his work which brings him home for meals at irregular hours; that she remained in bed until all hours of the morning, neglecting her house and household duties. In view of our conclusions we shall not discuss the property that the parties had accumulated. The court, however, granted cross-plaintiff a divorce and gave the custody of the child to cross-defendant. The latter being evidently displeased with the property settlement has appealed.

At the hearing she withdrew her bill of complaint, evidently being also willing that a divorce be granted and that she be given the custody of the 7-year old child and a fair share of the property. The court proceeded to take testimony on the cross bill, defendant and cross-plaintiff being the sole witness sworn. The testimony of cross-defendant's cruelty was so weak that the court remarked as follows:

"Well, Mr. Bradford, you don't make out a strong case, of course, for divorce under the law. In your own mind you may be satisfied you have been abused at home, but under the statutes requiring you to show repeated and extreme cruelty on the part of your wife, you do not make out a strong case. And because of that fact, the court wants you to give as much consideration as you possibly can to the idea of becoming reconciled to your family."

Defendant's testimony in regard to his wife being slovenly is as follows:

"Mrs. Bradford was slovenly; the dishes could stay in the sink, the breakfast dishes until afternoon. Shortly before I left there, things were pretty well taken care of, but she did leave March 10th for instance, and made a trip to Grand Rapids, and the breakfast dishes, dinner dishes and lunch dishes were scattered on the kitchen table, or on the serving closet, on the kitchen cabinet, in the sink and on

the stove. She is not a dirty woman, but her work would wait."

His testimony in regard to nagging him about living in Marne is as follows:

"She didn't complain about it exactly, but then she didn't approve of the idea. * * * She didn't constantly urge me to find another place in Grand Rapids, but I have heard it repeatedly. * * * We found places, but none that were suitable to her— there was always something wrong with all of them, mainly because no suitable transportation to the shopping district in Grand Rapids, that is infrequent service or none at all."

His testimony in regard to failing to prepare meals for him is as follows:

"Of course, she prepared meals for the others in the family and I ate with them. But I would very often come home at night half past one in the morning. * * *

"I quit work at 12:30 and at 1 and arrived home at about 1:30. And quite frequently there would be practically nothing prepared to eat."

There was considerable friction in the family because she took into the home a child of a divorced sister who soiled a freshly-painted wall. However, the child has left the home so this course of irritation is a thing of the past. He also objected to a roomer-boarder who was taken into the home and was noisy in the morning when cross-plaintiff wanted to sleep. The roomer-boarder worked nights and arrived at the home at 7:30 a.m. and his whistling disturbed cross-plaintiff. There is a disparity in ages between cross-plaintiff and his wife. He also has high blood pressure which may have been partly the cause of his irritation. At the time of the hearing, the parties had lived together 24 years; one of their children is only 7 years of age and, if possible,

should not be brought up in a broken home. Cross-plaintiff is a hard working man and he supported his wife to the best of his ability. Cross-defendant evidently also is a person of good morals and the fact that she has taken in a roomer-boarder would indicate that she is also hard working. The parties are possessed with the idea that they must be divorced. We do not believe that there has been sufficient grounds shown that would justify the granting of a divorce. The judge made strenuous but futile efforts to bring about a reconciliation but the parties seem obdurate. We find no grounds for divorce. When the parties find that they are not entitled to a divorce they should have enough good common sense and decency so as to exercise mutual forbearance and consideration for one another, remain true to their marriage vows and probably can and will have mutual respect and possibly affection for one another. They are bound to keep up a home together for each other's sake and especially for the little girl. We cannot countenance a divorce on such flimsy grounds.

In *Le Blanc* v. *Le Blanc,* 228 Mich 74, we quoted with approval as follows from 9 RCL, p 337:

"As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation, than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes."

To like effect see *De Vuist* v. *De Vuist,* 228 Mich 454.

Under the circumstances, the decree of the trial court is reversed, without costs. A decree may be entered dismissing the cross bill of complaint.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.