### CHARLES LEE v. CHAUNCEY W. WISNER.

*Indemnity Bond to Secure Future Advances.*

A joint and several bond under seal to refund at a given time future advances expressed to be for the benefit of one of the obligors, is void on its face as against the other for want of consideration,

An extension of credit will uphold a contract of suretyship.

The payment of money by a surety for his principal's benefit raises an implied promise against the principal to refund on demand, and giving credit for it is equivalent to an extension of credit.

A creditor is not precluded from recovering against his debtor's surety if he does not know of any confidential relation between the two and has no reason to believe the debtor was guilty of fraud or improper concealment as against the surety.

The rule that a party cannot testify to matters equally within the knowledge of a deceased opponent does not apply when the action is against a surety on the decedent's bond.

Where the identity of an official bond was fully made out by a certified copy, and it was shown to be the only bond executed between the parties, it was considered sufficiently established as a basis of liability on an indemnity bond based on it.

A judgment for the United States on an official bond is *prima facie* evidence of liability on a bond of indemnity given to the surety; but as a treasury balance establishes such liability if not objected to (Rev. Stat. U. S., Sec. 886) the introduction of the judgment is probably superfluous.

In a suit on an indemnity bond, evidence may be given of interviews between the parties thereto concerning their respective interests, whether before or after its date.

In an action on an indemnity bond that does not fully describe the bond secured, it is no variance that the latter contains the name of a surety not mentioned in the former.

Error to Saginaw. Submitted October 30 and 31, 1877. Decided January 9, 1878.

Assumpsit on bond. Defendant in error was plaintiff below. The facts are in the opinion.

*Gage & Gage* for plaintiff in error. The presumption of consideration is rebutted if the instrument shows that the value was received by a third person, *Ten Eyck v. Vanderpoel,* 8 Johns., 120. A contract of security is invalidated by any concealment of material facts on the part of the obligee, Story's Eq., § 324; *Rawdon v. Blatchford,* 1 Sandf. Ch., 344; *Franklin Bank v. Cooper,* 39 Me., 542; *Etting v. U. S. Bank,* 11 Wheat., 59. A surety's obligation cannot be enlarged without his consent, *Evers v. Sager,* 28 Mich., 52; *Bell v. Bruen,* 1 How., 169; *Miller v. Stewart,* 9 Wheat., 702; *Hall v. Williamson,* 9 Ohio St., 17; *State v. Medary,* 17 Ohio, 554; *McGovney v. State,* 20 Ohio, 93; *U. S. v. Boyd,* 15 Pet., 187; *Dobbin v. Bradley,* 17 Wend., 422; *Wright v. Johnson,* 8 Wend., 512; *Walsh v. Bailie,* 10 Johns., 180.

*Wisner & Draper* for defendant in error. A bond is valid in favor of an innocent obligee if the obligor in executing it knew it to be a bond, and no material fact

was kept from him with the knowledge or consent of the obligor, *Stone v. Compton*, 5 Bing. N. C., 142; *Jenners v. Howard*, 6 Blackf., 240; *Bigelow v. Comegys*, 5 Ohio St., 256; *Greenfield v. Edwards*, 2 DeG., J. & S., 582; *McWilliams v. Mason*, 31 N. Y., 294; *Magee v. Manhattan Life Ins. Co.*, 92 U. S., 93; *Durfee v. McClurg*, 6 Mich., 232; *Bowen v. Mead*, 1 Mich., 436; *Smith v. Osborn*, 33 Mich., 410.

CAMPBELL, C. J. This controversy arises upon a bond given by Lee to indemnify Wisner upon the liability of the latter upon a forfeited official bond of John B. Dillingham who had been collector of the Port of Mackinaw.

On the 29th of July, 1867, Dillingham, Wisner, and Hiram C. Driggs, became jointly and severally bound to the United States in the penal sum of $5,000 conditioned for Dillingham's faithful execution and discharge of the duties of his office as collector.

Some time in the year 1870 Wisner was informed that Dillingham was behind in his accounts, and received a balance sheet from the government showing the default to be about $3,700. He thereupon endeavored to get security from Dillingham, but without success. It was finally agreed that Wisner would do what he could to settle with the government and give Dillingham four years to repay his advances on receiving security, with ten per cent. interest. Various securities having been spoken of, and not found available, Dillingham proposed to give a bond with Lee as surety, and Wisner accepted the proposition. The bond was to be for $2,100 as the maximum, and to secure no more than actual advances up to that sum.

This bond was a joint and several bond in the sum of $2,100, with the following condition:

"that if the above bounden John B. Dillingham, his heirs, executors or administrators, shall, and do well and truly pay or cause to be paid unto the above named Chauncey W. Wisner, his certain attorney, executors, adminis-

trators or assigns, the sum of twenty-one hundred dollars, or so much or such part thereof as the said Wisner shall pay or cause to be paid on account of a bond made to the United States by said Dillingham, and on which said Wisner is surety, for the use and benefit of the above bounden Dillingham, on or before the fourteenth day of April, one thousand eight hundred and seventy-five, with interest to be paid on the whole sum so paid or caused to be paid at ten per cent., to be paid annually, without fraud or delay, then the preceding obligation to be void" etc.

Wisner was sued by the United States with Dillingham, and judgment was recovered against them March 11, 1873, for $4,057.55 and costs, and execution was levied on land July 24, 1873. In September, 1874, he settled with the government by paying $2,388.23 and $45.50 for marshal's fees.

Dillingham having died, the present suit was brought against Lee, and judgment obtained for the amount of the bond, $2,100 and costs. Lee brings error.

The chief controversy below, although presented in different forms, arose out of the alleged want of consideration of the bond, and the claim that Lee was induced to sign it by fraudulent concealment. Some minor questions of evidence are also presented.

The first objection urged was that the bond was not admissible in evidence, because bad upon its face for want of consideration.

Whatever questions may arise upon the consideration, we cannot see how the bond itself shows any defect. It is under seal, which is presumptive evidence of consideration, and which, in the absence of a statute to the contrary, would be conclusive. It calls for refunding future advances which Dillingham would be liable for, and there is nothing on the face of the bond to show why they do not stand like any other advances to be made for the accommodation of another person. The bond does not even show that Wisner was to be under any compulsion from the government before he paid them. Upon its

face it is an obligation to refund at a given time sums expressed to be for Dillingham's benefit, and it cannot be assumed that the bond is bad on its face, unless it would be legally impossible to suppose such payments could operate as a valuable consideration under any circumstances.

A more important question is whether the arrangement between Wisner and Dillingham did in fact create a valid consideration for the new agreement. Upon this there is no room for discussion. An extension of credit has always been deemed sufficient to uphold a contract of suretyship. As between Wisner and Dillingham all moneys paid by Wisner would raise an implied promise against Dillingham to refund them on demand. Giving credit until a fixed period in the future would, therefore, be a substantial benefit, sufficient to sustain a promise by Lee to be answerable for payment.

It was claimed on behalf of Lee that the bond was procured from him by fraud, and by keeping him in ignorance that Dillingham was a defaulter, and that Dillingham's relations with him were those of a confidential attorney, bound to inform him fully.

Upon this point, without discussing how far the obligations of various parties may extend under such circumstances, we think the instructions of the court below cannot be complained of by plaintiff in error. The plaintiff below, Mr. Wisner, did not ask for Lee's security and had no communication with him on the subject. He simply accepted Dillingham's proposition to give Lee's bond with his own. Under such circumstances Wisner was in no way concerned with the dealings between Dillingham and Lee, and was not bound to assume there was any danger of fraud against Lee. The form of the bond would itself indicate that Dillingham was liable for money to the United States that Wisner expected to pay which could only have been on some official default, and Wisner might fairly presume that Lee would do nothing

without satisfactory inquiry or indemnity. Lee's testimony shows that he took no pains whatever to know what he was becoming liable for. The court below charged the jury that if Wisner knew of any confidential relation between Dillingham and Lee, he would be affected by Dillingham's fraud if any was committed; and that if he knew or had reason to believe there was any improper concealment, he could not recover. This went quite as far as justice could require, and no authority has been cited which imposes any greater obligation on a creditor towards the surety of his debtor. Lee at least was not damnified by the rulings.

The remaining questions are chiefly questions of evidence and involve no important considerations.

As this was a suit against Lee alone on his several liability on a joint and several bond, there is no force in the objection that Wisner should not have been allowed to testify concerning matters equally within the knowledge of Dillingham, who is deceased. This suit is not a suit against Dillingham or his estate, or his heirs, representatives or assigns.

No proof was necessary of the execution of the bond, when not denied by affidavit. And as the proof on both sides clearly showed its execution, this point, if good when taken, would have become immaterial.

The bond given by Dillingham, and his sureties Wisner and Driggs, to the United States, was proved by the introduction of a copy certified under the acts of Congress, and not by subscribing witnesses. The law does not permit public records to be removed for private suits, and there is no other way to prove them. If proof of execution is requisite, it can only be required as in other cases where instruments are proved without their exhibition in court. Subscribing witnesses could not identify any thing but the original. *Eslow v. Mitchell*, 26 Mich., 500. The statutes of the United States make certified copies equal in evidence to originals; see U. S.

Rev. St., Sec. 886. The originals are only allowed to be produced by order of the court where suit is pending upon a denial under oath of their execution. *Ib.* This cannot mean that their execution must be proved in ordinary cases by subscribing witnesses. The identity of this bond as the only bond executed by Wisner and Dillingham was fully made out, and we are of opinion that no further proof was therefore requisite to connect the two bonds or to establish the official bond as a basis of liability.

Error is alleged on the admission of a judgment in favor of the United States against Wisner and Dillingham, upon which Wisner made the payments which were the foundation of this action. Whatever may be the effect of such evidence, it is difficult to see how Wisner could have proven a compulsory payment without it, and this it is insisted he was bound to prove. A complete liability was shown under the acts of Congress (R. S., Sec. 886), by the evidence unobjected to of a statement from the Treasury Department, but as the payments were on the judgment, that was properly received. The court charged that it was not conclusive, but only *prima facie* evidence in favor of Wisner. This ruling left it open to Lee to show any legal ground to impeach its force, if any existed, but no attempt was made to do this. His bond certainly, according to the claim set up before us, contemplated that Wisner would be subjected to suit and that judgment might be rendered against him, and that the moneys to be refunded would be paid under it. It is not necessary to determine how far this would prevent Lee from questioning such a judgment, when it is conclusive against Dillingham, whose debt he is surety for. Under the circumstances, there is no doubt of its being at least *prima facie* evidence. The defendant's own testimony shows that he knew of the suit, and that the parties were endeavoring to get the claim reduced, and all three were present at the interview for that purpose. He does not intimate that any of them questioned

the debt or cared to defend, but merely that they desired to compound for it. A judgment obtained under such circumstances cannot be regarded as of no force as evidence against any of them.

It may be deserving of consideration whether the whole testimony concerning this judgment was not surplusage when the treasury balance had been shown and not impugned or reduced.

Inasmuch as the amount paid by Wisner, exclusive of costs and expenses, considerably exceeded the sum secured by Lee's bond, the evidence of expenses becomes immaterial.

We do not think there was any error in receiving proof of any of the interviews between Lee and Wisner concerning their respective interests, whether before or after the date of the bond. Nor do we perceive what bearing Dillingham's possession or want of means could have on any question involved in this litigation, unless offered in connection with some proposition to show a fraud committed by Wisner on Lee. The questions put to Wisner on this subject on cross-examination, and ruled out, were not offered for this purpose. But inasmuch as the cross-examination proceeded after this ruling to cover the whole ground, the ruling was evidently disregarded, and even if wrong, did no damage.

The objection of variance, because Lee's bond refers to one made by Dillingham, and on which Wisner was a surety, while the proof shows a bond on which Wisner and Driggs were both sureties, has no force. The proof showed there was no other bond signed by Wisner and Dillingham. The recital in Lee's bond does not attempt to give a full description of the other bond secured.

All the questions properly raised on the record are covered by the conclusions which we have already expressed. We find no error in the record, and the judgment must be affirmed with costs.

GRAVES and COOLEY, JJ., concurred. MARSTON, J., did not sit in this case.