ROSS ET AL. *v.* COUDEN.

*Securities—Blue Sky Law—Section 6373-1 et seq., General Code—Sale of "unit" in land syndicate violates statute, when—Licensed dealer cannot traffic, without restriction, in own securities—Surety liable notwithstanding dealers personal interest in securities, when—Liability of general partners cannot be limited—Charge to jury—Refusal of special request not error, where facts erroneously assumed—Option on land assumed, where only option in option existed.*

1. Sale of instrument purporting to be a receipt evidencing an investment in land syndicate, but denominating such interest as a "unit," thereby importing a share in an enterprise, *held* sale of securities, within Blue Sky Law (Sections 6373-1 to 6373-22, General Code), and to constitute violation thereof, when security was disposed of without being certified as required by Sections 6373-14 to 6373-16, whether or not any false representations were made.

2. There is no limit to liability to which general partners bind themselves.

3. Where defendant had option on a one-half interest in option on land held by third persons, refusal of instruction which erroneously assumed existence in defendant of option on land *held* not error.

4. Dealer licensed under Blue Sky Law (Sections 6373-1 to 6373-22, General Code) to sell securities is not permitted to traffic without restriction in his own securities, or those in which he has interest.

5. Surety on bond of dealer, licensed under Blue Sky Law (Sections 6373-1 to 6373-22, General Code) to sell securities, is not absolved from liability for unauthorized sales because of personal interest dealer has in securities he sells.

(Decided November 4, 1926.)

ERROR: Court of Appeals for Franklin county.

*Messrs. Watson, Davis & Joseph,* for plaintiffs in error.

*Messrs. Bennett, Westfall & Bennett,* and *Mr. H. R. Schuler,* for defendant in error.

MAUCK, P. J.   Henley H. Couden, by his amended petition in the common pleas court, pleaded that on the 28th day of July, 1923, defendant James A. Ross was a licensed dealer in securities under the provisions of Sections 6373-1 to 6373-22, General Code, commonly known as the Blue Sky Law; that on the day mentioned, pursuant to the third section of that act, he gave to the approval of the state commissioner of securities the bond provided for by that section, with the United States Fidelity & Guaranty Company surety thereon.   He alleges that thereafter, on December 27, 1923, the defendant Ross disposed of to the plaintiff, for the sum of $10,000, then and there paid by plaintiff to said Ross, ''a membership certificate in an alleged syndicate, known as the Stone Mountain Land Syndicate, in the 540 acre tract of land immediately in front of Stone Mountain, Georgia, entitling said plaintiff to ten (10), shares of one thousand ($1,-000) dollars each, in said syndicate.''

It is then alleged that this disposition or sale of the certificate so made was in violation of the provisions of the act mentioned, on two grounds.   The first ground is that the security referred to had not been certified for sale in this state by the department of securities, which fact alone constituted such a delinquency as to create a liability against both Ross and the guaranty company.   The plaintiff pleads as a second ground that the sale to him of

the membership certificate referred to was accomplished by certain misrepresentations made to him by Ross, which were in substance that the Stone Mountain Land Syndicate had acquired a 540-acre tract of land immediately facing· the Stone Mountain cliff, upon which was being carved a memorial to the Southern Confederacy; that $160,000 had already been subscribed to said syndicate, out of $200,000 required; that the defendant Ross had invested $29,000 of his own money in such syndicate, and that but $40,000 additional was needed to carry out the project—all of which representations were untrue, but were relied upon by plaintiff to be true. Plaintiff therefore sought judgment against both of the defendants in the sum of $10,000.

The second amended answer of the defendants, for a first defense, denied generally the allegations in the amended petition; but for a second defense the defendants pleaded in detail what they claimed to be the circumstances leading up to the payment by the plaintiff to Ross of the $10,000 referred to in the petition, the substance of which was that Ross and an associate of the name of Patton and the plaintiff formed a syndicate or partnership for the development of lands in the Stone Mountain neighborhood, that the $10,000 which plaintiff paid Ross December 27, 1923, was the plaintiff's contribution to that partnership so formed, that subsequently it became apparent that this partnership could not accomplish its purpose and thereupon, in May, 1924, Ross and Patton and the plaintiff agreed that the plaintiff should surrender the paper evidencing his interest in the alleged partnership, and accept therefor another and different instru-

ment, and that thereafter the original instrument, issued December 27, 1923, ceased to have any effect, because of its having been superseded by the later instrument dated May 24,. 1924.

To this second defense the plaintiff replied that the instrument delivered to him in May, 1924, was only delivered as an additional security for the $10,000 which he had invested with Ross in the preceding December, and. that, while he surrendered in May the certificate that he had received in December, he did so because of false and fraudulent representations made to him by Ross, and that the exchange itself was so tinctured with fraud as to be null and void.

Upon these issues the case went to trial. The jury returned a verdict for $10,000 against both Ross and the surety company, and judgment was entered on the verdict. To reverse that judgment error is prosecuted in this court.

That Ross was a licensed dealer in securities in this state, and that the surety company executed the bond as pleaded, is admitted. It is further admitted in the record that about December 24, 1923, the plaintiff paid Ross $10,000 and received from him the paper writing quoted below. It further appears that the said paper writing was without any value when this action was brought.

If the instrument described in the petition and forming the basis of the action was such an instrument as is covered by the Blue Sky Law, there was enough evidence to warrant the jury in finding for the plaintiff on all the issues in the case, and the verdict that resulted cannot be disturbed, except for some intervening, prejudicial error.

The petition averred that this instrument was a membership certificate in an alleged syndicate known as the Stone Mountain Syndicate. When offered in testimony it was found to read as follows:

"Dated at Cincinnati this 24th day of Dec., 1923. Received of Henley H. Couden ten thousand dollars ($10,000), receipt of which is hereby acknowledged by a payment in full for ten units fully participating in the Stone Mountain Land Syndicate five hundred forty (540) acres in front and in full view of the Confederate Memorial, Stone Mountain.

"Stone Mountain Land Syndicate,

"J. A. Ross."

The first question that arises, therefore, is whether such an instrument is such a security as is covered by the Blue Sky Law. The first section of that law (Section 6373-1, General Code) regulates the disposal of "any stock, stock certificates, bonds, debentures, collateral trust certificates or other similar instruments * * * evidencing title to or interest in property," and defines all such instruments as securities. This very comprehensive language is given the comprehensive application that its terms require in *Groby* v. *State,* 109 Ohio St., 543, 143 N. E., 126.

It is not necessary to repeat here what is so forcibly laid down in the opinion in that case. It is sufficient to say that in that case the court was considering an instrument denominated a membership receipt in a syndicate. In the instant case we have an instrument purporting to be a receipt evidencing an investment in a syndicate, but denom-

inating such interest by the term "unit." This term imports a part in an enterprise, and it is an apt term to describe a share in such a syndicate as the statute was designed to control. *State* v. *Summerland,* 150 Minn., 266, 185 N. W., 255. No difficulty is experienced, therefore, in holding that the instrument in question by force of its own terms comes under the provisions of the statute, and, as it was admitted that it was never certified as such security, under the provisions of Sections 6373-14 to 6373-16, General Code, a violation of the law ensued when the security was disposed of, whether or not any false representations were made to the purchaser.

The defendant, however, undertook to destroy the apparent character of the instrument by showing by parol that at the time the plaintiff paid his $10,000 and received the security the real agreement was that the plaintiff, the defendant, and one Patton were forming a partnership in the lands referred to in the security, and that this instrument was a mere receipt evidencing the plaintiff's contribution to that partnership. As we view it, the trial court was generous to the defendant in submitting this issue to the jury. We are unable to see how one entering into a general partnership could by contributing his share of the capital make "a payment *in full* for ten units fully participating" in a land syndicate. It is a contradiction in terms to speak of a general partner's interest as paid in full, for there is no limit to the liability to which he binds himself. However this may be, the question of the partnership was fully submitted to

the jury, both by special and general charges, of which the defendant cannot complain.

It is true that complaint is now made of the refusal of the court to give to the jurors special instruction No. 1 in regard to the liability of the defendant company in case they found a partnership was formed, but special instruction No. 2, couched in identical language, was given, and inured to the benefit of both defendants. Moreover, in no aspect of the case was the defendant entitled to either instruction, because both erroneously assumed as an established fact that Ross and Patton had "acquired the options upon what is known as the Stone Mountain Syndicate property of 540 acres."

This claim of an option on the lands in question rests upon a contract between Whittle and Atkins, on one side, and Ross and Patton, on the other, made November 27, 1923. Whittle and Atkins did not own the property, nor had they any interest therein. All that they had was an option to buy the land for $250,000. By their contract with Ross and Patton they agreed that if the latter paid them $25,000 by the following January 22, they would assign to Ross and Patton a one-half interest in the option. Ross and Patton, therefore, had no option on the land. At most they had an option on a one-half interest in an option. There was every reason, therefore, to reject the special instruction No. 1.

The defense also sought other instructions of like import. It was claimed that even if no such partnership was entered into by the plaintiff, and even if the latter actually bought the security, no action would arise under the statute if the jury

should find that Ross and Patton were optionees of the property. This claim rests on the theory that under such state of facts Ross would have been selling only his own property. Such instructions were properly refused for sound reasons. First, as we have already pointed out, Ross and Patton had no interest in the land, not even an option thereon; second, the writing of December 24 does not describe an option on an option, but 10 units in a syndicate. The third reason, applicable also to other claims of the defendant, is that the statute does not permit a licensed dealer to traffic in his own securities without restriction. If it were to be held that a licensed dealer by acquiring some personal interest in the security being vended by him would by that fact absolve the surety on his bond from liability, the statute would be rendered worse than useless, by enabling a dealer to create the appearance of responsibility without the substance thereof. It is to be borne in mind that Ross was a licensed dealer.

The term "dealer" is defined by the act as including one who disposes or offers to dispose of any security to agents, or otherwise, except the term does not include an owner who disposes of his own property for his own account, and who is not the issuer of the security so disposed of. While the statute does not make one a dealer who disposes of securities owned by him and issued by some one else, it does place a dealer in securities in a class apart from other men, and does place upon him additional duties, burdens, and responsibilities, not common to business men generally, even in the disposition of securities in which he

may have an interest. This situation arises because of special privileges conferred by the act upon a dealer in securities. Such dealer receives from the state a certificate. This certificate is *prima facie* evidence that its bearer is of good business repute, has never made any misrepresentations regarding any stock which he has been licensed to sell, has never engaged in any illegitimate business or in fraudulent transactions, and is solvent. This license, moreover, imports that the securities being vended by the bearer thereof have been certified by the state, which means that their regularity has been given at least some investigation by the supervising officers. The licensed dealer, therefore, vending securities in this state, goes to the purchasing public with an advantage that he did not possess, however worthy he might personally have been, prior to the enactment of the Blue Sky Law.

It was consequently reasonable that the Legislature should, in return for these great advantages, require something from the dealer. This it did by the terms of the bond which it required such dealer to give. One such provision (Section 6373-3, General Code) is that he should "indemnify any purchaser of securities   *   *   *   who suffers a loss by reason of misrepresentations in the sale of such security by such dealer or agent," and a general condition of his bond is based upon the faithful observance by him of all the provisions of the act. These terms cover all sales of securities made by a licensed dealer. While he need not have become a dealer to vend his own property, he cannot become a dealer, and secure a dealer's advan-

tages, and then avoid a dealer's responsibilities, by urging that in a given instance he was relieved of those responsibilities by some personal interest in the security vended.

By applying the views thus expressed to each of the several requested instructions that were refused, it will be seen that all of said requests were properly denied, and like and other reasons justified the trial court in refusing to submit to the jury the special interrogatories requested.

Our conclusion, stated broadly, is that there was nothing in the possibilities that Ross had of acquiring some interest in the tract on which Whittle and Atkins had an option that would relieve his surety from liability when he sold the security in December, 1923, and that the jury were warranted on the testimony relating to the substituted security in finding in that respect that the reply was true and the answer untrue.

*Judgment affirmed.*

SAYRE and MIDDLETON, JJ., concur.

Judges of the Fourth Appellate District, sitting in place of Judges ALLREAD, FERNEDING and KUNKLE, of the Second Appellate District.