# JANUARY TERM, 1937.

EICHBAUER *v.* UNITED STATES FIDELITY & GUARANTY CO.

1. BROKERS—SOLICITATION BY INVESTOR.

    One does not cease to act as a broker solely for the reason that in a particular transaction the investor solicits broker to procure the security for him, hence broker's surety is liable for broker's fraud (2 Comp. Laws 1929, § 9790).

2. SAME—SALE OF OWN MORTGAGE—SURETY'S LIABILITY—EVIDENCE OF BROKERAGE TRANSACTION.

    In action by investor against surety on broker's bond, given under blue sky law, evidence that broker gave plaintiff usual forms of brokers' confirmation in consummating sale of broker's own mortgage, that envelope in which broker placed mortgage was of kind customarily used in brokerage transactions and was filled out in manner and form usually adapted to brokerage deals conducted by the broker involved, and plaintiff's own uncontradicted testimony showed seller of mortgage acted in the capacity of a broker *held*, to justify holding that sale of mortgage was a brokerage transaction under the blue sky law (2 Comp. Laws 1929, § 9790).

3. SAME—SALE OF OWN MORTGAGE.

    While one need not become a licensed dealer in securities to vend his own property, he cannot become such a dealer and secure dealer's advantages and then avoid a dealer's responsibilities by urging that, in a given instance, he was relieved of those responsibilities by some personal interest in the security vended (2 Comp. Laws 1929, § 9769 *et seq.*).

4. SAME—BLUE SKY LAW—CONSTRUCTION.

    The blue sky law should be liberally construed in view of its purpose to prevent deception in the purchase of securities and

(674)

to safeguard public from misappropriation of proceeds of securities left with broker for sale and investment of proceeds in designated securities (2 Comp. Laws 1929, § 9769 *et seq.*).

5. SAME—MORTGAGES—FRAUD—BLUE SKY LAW.

Sale of third mortgage as a first mortgage by a general broker, dealing in bonds, stocks and mortgages, in consideration of bonds and cash *held,* fraud against which public is protected by blue sky law and bond given thereunder (2 Comp. Laws 1929, § 9790).

6. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED —SURETY ON BOND GIVEN UNDER BLUE SKY LAW.

Investor's conversation with broker who died prior to trial *held,* admissible in action against surety on broker's bond, given under blue sky law, since such surety is not entitled to invoke statute excluding matters equally within knowledge of a deceased, though weight of such testimony is for trier of the facts (Comp. Laws 1929, §§ 9790, 14219).

7. APPEAL AND ERROR—BROKER'S SURETY—EVIDENCE—WITNESSES— MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

In investor's action against surety on broker's bond, given under blue sky law, evidence *held,* sufficient to sustain verdict for plaintiff aside from evidence claimed to have been inadmissible because equally within knowledge of deceased broker (Comp. Laws 1929, §§ 9790, 14219).

8. SAME—AMENDMENT OF PLEADING—ABUSE OF DISCRETION—STATUTE OF LIMITATIONS.

In investor's action against surety on broker's bond, given under blue sky law, whether it was an abuse of discretion on the part of the trial judge to deny permission to amend answer to cover statute of limitations contained in blue sky law is not decided where such statute of limitations would have been inapplicable if pleaded in the first instance (2 Comp. Laws 1929, §§ 9788, 9790).

9. BROKERS—MORTGAGES—BLUE SKY LAW—STATUTE OF LIMITATIONS.

Two-year statute of limitations of blue sky law *held,* applicable to rescission of sale of security sold contrary to filing provisions of that law or sale contrary to an order of the securities commission but inapplicable to broker's sale of a mortgage that was not required to be filed (2 Comp. Laws 1929, §§ 9769– 9788, 9790).

10. SAME—STATUTES—RESCISSION—BLUE SKY LAW—COMMON-LAW FRAUD.

The statutory right of rescission of a sale contrary to the filing provisions of the blue sky law or order of the securities commission is conferred irrespective of whether the sale could be avoided under principles of common-law fraud (2 Comp. Laws 1929, § 9788).

11. SAME—BLUE SKY LAW—EXEMPTIONS—ISOLATED TRANSACTIONS —LICENSES—BONDS.

Surety on broker's bond, given under blue sky law *held*, liable for fraud in sale of broker's own mortgage to investor notwithstanding its claim sale was exempted as an isolated transaction involving broker's own property, where exemption provision is qualified by saving clause reading "except as hereinafter provided" and subsequent section required persons dealing in securities, whether exempt from provisions of previous sections or not, to obtain a license and file a bond (2 Comp. Laws 1929, §§ 9773, 9789).

12. SAME—FRAUD—SALE OF OWN MORTGAGE—DEALERS—CONSTRUCTION OF STATUTE.

Surety on broker's bond, given under blue sky law, *held*, liable for fraudulent sale of broker's own mortgage to plaintiff investor notwithstanding provision of the law that subdivision of which it formed a part should not be construed as prohibiting an owner from selling his own securities except where he sells them in continued and successive transactions, where such provision was merely intended to define who should be a dealer within the meaning of the subdivision and there is no question about broker involved being a dealer (2 Comp. Laws 1929, §§ 9789–9795).

13. SAME—SURETY—FRAUD—BLUE SKY LAW.

A dealer and his surety under bond, required by the blue sky law, are liable for fraudulent sales of securities whether exempt from or included in provisions of subdivision of the law relating to filing and validating of securities by the securities commission (2 Comp. Laws 1929, §§ 9789, 9790).

14. PRINCIPAL AND SURETY—SECURITIES BROKER—EMBEZZLEMENT—EXTENSION OF TIME FOR REPAYMENT.

Defendant, a paid surety on bond given by securities broker, licensed under blue sky law, *held*, liable to investor's assignee

for balance due on sum embezzled from investor upon which broker had made some weekly payments, where record fails to show either an agreement or a consideration for the extension given broker (2 Comp. Laws 1929, § 9790).

15. Appeal and Error—Judgment—Interest.

Judgment against surety on broker's bond *held,* not excessive by amount of item of interest paid by broker on mortgage sold plaintiff investor, upon recalculation of amounts, addition of legal rate of interest and credit of amount paid.

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 15, 1936. (Docket No. 125, Calendar No. 39,211.) Decided January 5, 1937.

Assumpsit by Elmer F. Eichbauer against United States Fidelity & Guaranty Company, a foreign corporation, as surety of Carl Kiburtz, a securities dealer, for money obtained by fraudulent sale of a mortgage and by embezzlement. Judgment for plaintiff. Defendant appeals. Affirmed.

*David I. Hubar (Milton M. Maddin,* of counsel), for plaintiff.

*Payne & Payne,* for defendant.

Butzel, J. Carl Kiburtz of Monroe, Michigan, in order to qualify as a dealer in securities in Michigan, executed a bond with defendant as surety, in compliance with (2 Comp. Laws 1929, § 9790), the blue sky law. He opened an office in Monroe where, as appeared from his printed stationery and a schedule of his liabilities, he engaged in the general business of buying, selling and trading in bonds, stocks, mortgages and farm loans.

Plaintiff and his family had several transactions with Kiburtz as their broker, involving the purchase

of bonds and mortgages. In August, 1931, plaintiff agreed to purchase a first mortgage of $1,800 on a Michigan farm from Kiburtz and in payment thereof delivered to him certain school bonds valued at $1,488.33 plus the sum of $311.67 in cash. The mortgage and note were thereupon assigned by Kiburtz to plaintiff, but the mortgage was not recorded until after the assignment to plaintiff. The latter did not examine the abstract given him with the mortgage but relied on Kiburtz' statement that it was a first mortgage.

In the summer of 1932, plaintiff's father discovered that Kiburtz had collected $1,000 on another mortgage sold by Kiburtz to plaintiff's father, but that Kiburtz had only turned over $200, fraudulently withholding $800. At a conference between the parties, Kiburtz begged for an opportunity to make restitution at the rate of $50 per week and $500 was repaid. On discovering Kiburtz' defalcation in this matter, plaintiff investigated his own mortgage purchased from Kiburtz and discovered for the first time that the latter had also defrauded him by representing the mortgage to be a first mortgage, when in fact it was a third mortgage. A receiver was subsequently appointed for Kiburtz on petition of the attorney general for the State of Michigan. Kiburtz was taken to an institution in Ypsilanti, Michigan, and died shortly after returning home. Plaintiff's father also died but prior to his death, he assigned the $300 claim against Kiburtz and his surety to plaintiff.

Plaintiff brought the instant suit on the bond to recover the $1,800 plus interest and also the $300 plus interest. Proper tender of the worthless mortgage had been made to Kiburtz at the time of the conference. The declaration, though loosely drawn, contains sufficient allegations to support the judgment.

The testimony shows beyond any question that Kiburtz misrepresented the mortgage to plaintiff; that Kiburtz dealt in mortgages as well as bonds and stocks; and that the mortgages as a rule were taken in Kiburtz' name and assigned by him to the purchasers thereof. The receiver testified that the transaction with plaintiff was listed in Kiburtz' sales register which disclosed that Kiburtz made a profit of $250 in the transaction. In the statement of Kiburtz' liabilities, there appear eight other mortgage transactions in which it is claimed Kiburtz was guilty of defalcations. The case was tried without a jury and a judgment rendered for plaintiff for the entire amount claimed.

Defendant contends that plaintiff went to Kiburtz and requested the mortgage in question and therefore Kiburtz did not act as a broker. However, one does not cease to act as a broker solely for the reason that in a particular transaction the purchaser solicits him to procure the security for him. *Zapf* v. *Ridenour,* 198 Iowa, 1006 (200 N. W. 618). Kiburtz gave plaintiff the usual forms of brokers' confirmation in consummating the sale of the mortgage in question. The envelope in which Kiburtz placed the mortgage was one customarily used in brokerage transactions and in this instance was filled out in manner and form usually adapted to brokerage deals conducted by Kiburtz. In addition the plaintiff's own uncontradicted testimony shows that Kiburtz acted in the capacity of broker in this transaction. We agree with the trial judge in holding that the sale was a brokerage transaction under the blue sky law.*

Defendant, however, contends that the sale was not within the purview of the blue sky law because it

---

* See 2 Comp. Laws 1929, § 9769 *et seq.*—REPORTER.

was an isolated transaction on the theory that Kiburtz was selling a security which he owned in his own name. In *Ross* v. *Couden,* 22 Ohio App. 330 (154 N. E. 527, 529), in construing the Ohio blue sky law which, like the Michigan law (2 Comp. Laws 1929, § 9789), does not require a license or bond for an individual owner who occasionally sells his own securities, the court held that a broker who was bonded to sell securities in the general course of his business was also bonded for honesty in selling securities privately owned by him. It said:

"While he need not have become a dealer to vend his own property, he cannot become a dealer and secure a dealer's advantages, and then avoid a dealer's responsibilities, by urging that in a given instance he was relieved of those responsibilities by some personal interest in the security vended."

Was the fraud practiced by Kiburtz covered by defendant's bond? In *Stone* v. *Indemnity Ins. Co. of North America,* 267 Mich. 580, we pointed out that the blue sky law should be liberally construed, its purpose being to prevent deception in the purchase of securities and that the bond given by the broker was for the purpose of safeguarding the public against misappropriation of proceeds of bonds left with the broker for sale and investment of the proceeds in designated securities. When a broker in his general brokerage business, which includes the purchase and sale of bonds, stocks and mortgages, purchases bonds and receives cash in payment for a third mortgage on the representation that it is a first mortgage, he is guilty of fraud against which the public is protected by the blue sky law and the bond given thereunder. In *Hogberg* v. *Landfield,* 99 Cal. App. 360 (278 Pac. 907) cited in 87 A. L. R. 147, the court stated in reference to a similar situation that arose under the California blue sky law:

"Section 5 of the corporate securities act provides that the surety on the bond given under the terms of that act shall be liable to any and all persons who may suffer loss by reason of the broker's failure to comply with the act. Manifestly the sale of securities by a licensed broker accomplished through false and fraudulent representations is a noncompliance with the provisions of the corporate securities act."

The court permitted plaintiff to testify as to conversations with Kiburtz who died prior to the trial. It is claimed by defendant that such testimony should have been excluded because it was equally within the knowledge of deceased. In *Lee* v. *Wisner,* 38 Mich. 82, we held that a surety may not invoke the benefit of the statute (3 Comp. Laws 1929, § 14219). The testimony was admissible though its weight might be considered by the trier of the facts. However, even if this testimony had been excluded, there was sufficient additional testimony to sustain the verdict.

Defendant further contends that inasmuch as plaintiff brought no action for recovery of the purchase price within two years from the date of the sale, the claim is outlawed by virtue of the two-year statute of limitations set forth in section 20 of the blue sky law (2 Comp. Laws 1929, § 9788). The statute was not pleaded in defendant's answer or at the pre-trial docket when parties have the opportunity to check their pleadings and ask for amendments. After the testimony was all in, defendant sought to amend its answer by including the statute of limitations (section 9788). It claimed that it had this right on account of an alleged variance between the proof and the declaration. The declaration referred to the mortgage in question as "mortgage bonds" but the proof showed only one note secured by a third mortgage. While the trial judge stated he would take the motion under advisement, he did not directly pass on

it, though he inferentially denied it when he rendered judgment for plaintiff. We need not decide whether there was an abuse of discretion in denying the proffered amendment, inasmuch as the two-year statute of limitations would not have been applicable even had it been pleaded in the first instance.

The blue sky law, as it stood at the time of this fraudulent sale, was divided into three main subdivisions. Subdivision 1 contained detailed requirements for the filing and validating of securities before the securities commission. Subdivision 2 regulated the conduct of dealers and their salesmen by providing for the securing of licenses and the posting of bonds, and enumerated grounds for revocation of licenses. Subdivision 3 imposed criminal penalties for violations of the act. The two-year limitation provision referred to by defendant is found in subdivision 1 only, being 2 Comp. Laws 1929, § 9788. It provides as follows:

"Every sale or contract for sale of any security, not accepted for filing under this act or made contrary to any order of the commission, shall be voidable at the election of the purchaser, and the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought under this section: Provided, That no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale. No purchaser otherwise entitled shall claim or have the benefit of this section, who, having knowledge of the fact that such sale was made in violation of the provisions of this act, shall have refused or fail within a reason-

able time to accept the voluntary offer of the person making the sale to take back the securities in question and to refund the full amount paid by such purchaser."

A reading of this section indicates its inapplicability to the transaction in the instant case. It gives a purchaser a statutory right, within two years, to rescind a sale in two situations: (1) Where a security is sold contrary to the filing provisions of subdivision 1; (2) Where a security is sold contrary to an order of the commission. Clearly, it contemplates a security which in the first instance is required to be accepted for filing. The statutory right of rescission is conferred irrespective of whether the sale could be avoided under principles of common-law fraud. In *Waisbren* v. *Blink,* 207 Wis. 619 (242 N. W. 169), the court in construing a similar provision, under the Wisconsin blue sky law, held:

"That three-year limitation in those provisions applies to every action brought for the recovery of the purchase price, *when the underlying ground for the purchaser's recovery is the want or absence, in the first instance, of the permit or authority to sell the security.*"

The two-year limitation provision is inapplicable to a sale in which the security was not subject to filing and validation under subdivision 1 of the blue sky law. No claim was made by either party that the sale of the mortgage from Kiburtz to plaintiff was subject to filing under the act. In fact, defendant conceded in its brief that the transaction was exempt from filing when it claimed that the sale constituted an isolated transaction under 2 Comp. Laws 1929, § 9773, subd. c. It, however, contended that the sale, falling within the exceptions of 2 Comp. Laws 1929, § 9773, was beyond the reach of

the blue sky law for any and all purposes. It is true that section 9773, in subdivision 1, purports to enumerate certain types of transactions which are exempt from the provisions of the act. The extent of the exemption is, however, qualified by a saving clause. Section 9773 provides:

"*And, except as hereinafter provided,* the provisions of this act shall not apply to the sale of any security in any of the following transactions * * *

"(c) In an isolated transaction in which any security is sold, offered for sale, or delivered by the owner thereof, or by his representative for the owner's account such sale or offer for sale or delivery not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such representative, and such owner or representative not being the underwriter of such security."

Passing to section 9789, in subdivision 2, it is provided that a person engaged in the business of dealing in securities, *whether exempt from the provisions of subdivision 1 or not,* is required to take out a license and further, by 2 Comp. Laws 1929, § 9790, such dealer must file a bond in the sum of $10,000. The instant case, therefore, presents a situation in which the transaction is exempt from the provisions of subdivision 1, but nevertheless within the contemplation of subdivision 2 of the blue sky law. We are not unmindful that section 9789 in subdivision 2 provides that:

"Nothing in this subdivision shall be construed as prohibiting a *bona fide* owner of securities from selling the same, excepting that when such owner sells or desires to sell such securities in continued and successive transactions of a similar nature, he shall be deemed a 'dealer' therein and subject to the provisions hereof."

The language in this section resembles somewhat the wording used in section 9773. A careful reading, however, reveals that section 9789 merely intends to define who shall be a dealer within the meaning of subdivision 2, whereas the exemptions found in subdivision 1 relate to filing requirements with the securities commission. We are therefore not concerned with the exception set out above in section 9789 inasmuch as there is no question in this case about Kiburtz being a dealer. A dealer and his surety are liable for fraudulent sales of securities "whether exempt from or included in the provisions of subdivision 1 of this act," by the very terms of 2 Comp. Laws 1929, §§ 9789, 9790.

Kiburtz also acted fraudulently in his brokerage business when he embezzled funds consisting of a payment made on a mortgage sold by Kiburtz to plaintiff's father. Defendant was a paid surety and while it is true that Kiburtz agreed to pay the amount embezzled by him at the rate of $50 per week and did return $500 of the $800 unlawfully withheld, the record does not show that there was any agreement for an extension given to Kiburtz nor any consideration for such extension. Plaintiff by assignment had a right to recover the $300 and interest unlawfully withheld by Kiburtz.

Defendant claims that the $63 in interest paid by Kiburtz on the first mortgage should have been credited in computing the amount due plaintiff. We have recalculated the amounts and after adding the legal rate of interest and crediting the $63 paid, we find that the judgment is not excessive.

The judgment is affirmed, with costs to plaintiff.

Fead, C. J., and North, Wiest, Bushnell and Sharpe, JJ., concurred. Toy, J., took no part in this decision. Potter, J., did not sit.