DETWILER *v.* GLAVIN.

BRYANT *v.* SAME.

PECAR *v.* SAME.

SEPARATE OPINION.

DETHMERS, SOURIS, and O'HARA, JJ.

1. BROKERS—PURPOSE OF BLUE SKY LAW.
   The blue sky law was enacted "to prevent deception in the purchase of securities," not to deprive such purchasers of an existing cause of action but to create a statutory remedy for those to whom sales were made in violation of the act (CL 1948 and CLS 1956, § 451.101 et seq.).

2. SAME—STATUTES—RESCISSION—BLUE SKY LAW—COMMON-LAW FRAUD.
   The statutory right of rescission of a sale contrary to the filing provisions of the blue sky law or order of the corporation and securities commission is conferred irrespective of whether the sale could be avoided under principles of common-law fraud (CL 1948, § 451.120).

3. FRAUD—COMMON LAW—BLUE SKY LAW.
   The common-law action for fraud was not abolished by the blue sky law (CL 1948 and CLS 1956, § 451.101 et seq.).

---

* Continued from Volume 376 Mich.

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Securities Acts §§ 1, 39 et seq.
Blue Sky Laws. 87 ALR 42.
[2–5] 47 Am Jur, Securities Acts §§ 42, 50.
[6, 7, 10, 12, 14] 30A Am Jur, Judgments § 347 et seq.
[8, 13] 5 Am Jur 2d, Appeal and Error § 760.
[9] 34 Am Jur, Limitation of Actions § 1 et seq.
[11] 5 Am Jur 2d, Appeal and Error § 905 et seq.

4. ACTION—BLUE SKY LAW—FRAUD.

*The statutory remedy of giving the purchaser of a security the option of making his purchase voidable when the blue sky law is not observed does not require a showing of fraudulent representations, reliance, or consequent damage (CL 1948 and CLS 1956, § 451.101 et seq.).*

5. FRAUD—COMMON LAW—BLUE SKY LAW.

*The common-law action for fraud requires a showing of fraudulent representation, reliance thereon, and consequent damage, and where the subject matter of the action may also be subject to the blue sky law, the common-law remedy survives the statute, hence, it would be error for a trial court to conclude the statutory remedy was exclusive so as to mandate bringing the action within 2 years (CL 1948 and CLS 1956, § 451.101 et seq.).*

6. JUDGMENT—RES JUDICATA.

*The doctrine of res judicata does not apply to a decision which was not rendered on the merits of the question involved.*

7. JUDGMENT—RES JUDICATA—BLUE SKY LAW—COMMON LAW—FRAUD—LIMITATION OF ACTIONS.

*Trial judge's determination in prior action that such action was an attempt by plaintiffs to assert a cause of action for rescission under the blue sky law, but that it was barred by that law's 2-year limitation period, not having been reversed, was not a bar to later instant action at common law for fraud to which the general 6-year statute of limitations is applicable (CL 1948, § 451.120; CLS 1956, § 609.13).*

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE—FRAUD—OIL AND GAS LEASES—BLUE SKY LAW—PARTIES.

*Whether interests in oil and gas leases involved in action for common-law fraud were securities within the meaning of the blue sky law is not determined, where such determination was unnecessary to decision that the common-law remedy had not been abrogated by the statute and because corporation and securities commission is not a party and has not filed a brief herein (CLS 1954, § 451.102).*

OPINION OF THE COURT.

9. ACTION—LIMITATION OF ACTIONS.

The Supreme Court can take note of the fact that normally an attorney does not file suit on a claim outlawed by a statute of limitations, especially if there is available a remedy as to which the statute of limitations has not run.

10. JUDGMENT—RES JUDICATA—BLUE SKY LAW—AVAILABLE REMEDY.

Trial judge's dismissal of case wherein there had been put in issue whether the statutory remedy accorded by the blue sky law was the plaintiffs' exclusive remedy constituted a determination that such remedy was the only remedy available to plaintiffs therein and that it was barred by the 2-year statute of limitations contained in that act (CL 1948, § 451-.120).

11. APPEAL AND ERROR—DISMISSAL OF APPEAL.

The dismissal of an appeal for failure to conform to court rule requirements and bring before the Supreme Court all information the Supreme Court deemed necessary to pass upon the merits of the case does not constitute a determination on the merits of a controversy, but it does have the effect of affirming the holding of the trial court with regard to the law insofar as plaintiffs were concerned.

12. JUDGMENT—RES JUDICATA—INEFFECTIVE APPEAL.

A valid but erroneous judgment of the trial court bars a second suit by the same plaintiffs under the doctrine of *res judicata*, where their appeal from the first judgment failed for technical reasons.

13. APPEAL AND ERROR—QUESTIONS REVIEWABLE—FRAUD—COMMON LAW—OIL AND GAS LEASES—BLUE SKY LAW.

The existence of the statutory remedy afforded by the blue sky law does not affect the common-law remedy of purchasers for fraud committed in the sale of an interest in an oil and gas lease, hence, it is unnecessary to determine whether the leases are *securities* as that term is defined in the statute (CLS 1954, § 451.102).

14. SAME—RES JUDICATA—REHEARING—NEW TRIAL.

Application of doctrine of *res judicata* which results in a miscarriage of justice impels treatment of second appeal as in the nature of a rehearing of the first case, declaration of reversible error in the judgment entered therein, and reversal and remand for a new trial.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted May 12, 1965. (Calendar Nos. 25–27, Docket Nos. 50,748–50,750.) Decided December 7, 1965.

Complaint by John W. Detwiler against Clem Glavin, doing business as Glavin Oil Company, for recovery of the purchase price of oil and gas leases sold under alleged misrepresentation. Similar action by William Robert Bryant and LeRoy H. Pecar and Ann M. Pecar. Accelerated judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Orville F. Sherwood,* for plaintiffs.

*Cozadd, Shangle & Smith (B. Ward Smith,* of counsel), for defendant.

O'HARA, J. (*for reversal*). Presented by this appeal are 2 questions. First, whether the disposition of a prior suit brought by plaintiffs, LeRoy H. Pecar and Ann M. Pecar, against defendant renders the issues raised by this suit *res judicata.* The second is the construction of a statute commonly called the blue sky law.[1]

The controversy grows out of the purchase, assignment and reassignment of oil and gas leases. In May, 1955, Elmer and Elizabeth Flaugher executed an instrument entitled "OIL AND GAS LEASE" which provided that for consideration they:

"Grant, demise, lease and let unto the said lessees [Central Michigan Oil Co.] for the sole and only purpose of mining and operating for oil and gas \* \* \* all that certain tract of land \* \* \* described as follows, to wit: [here follows the legal description of the leased land]."

On April 26, 1955, Ralph and Sarah Howell leased, by identical instrument, the north 1/2 of the southeast 1/4 of the the adjoining section in which the

---

[1] PA 1923, No 220, as amended, CL 1948 and CLS 1956, § 451.101 *et seq.* (Stat Ann 1964 Rev § 19.741 *et seq.*).

Flaugher land was located to the same lessee. All were for an initial 5-year period and continuing so long as oil and gas were produced. Each lease contained the following provision:

"In consideration of the premises the lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, into tank reservoirs or into the pipe line to which lessee may connect wells on said land, the equal 1/8 part of all oil produced and saved from the leased premises.

"2d. To pay lessor 1/8 of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline a royalty of 1/8, payable monthly at the prevailing market rate for gas. Where such gas is not sold or used for a period of one year, lessee shall pay or tender as royalty an amount equal to the yearly delay rental as provided by the provisions of this lease, payable annually at the end of each year during which such gas is not sold or used, and while such royalty is so paid or tendered this lease shall be held as a producing property under the above paragraph setting forth the primary term hereof. Lessor is to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling on said land during the same time, by making lessor's own connections with the well at lessor's own risk and expense.

"3d. To pay lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of 1/8 of the proceeds, payable monthly at the prevailing market rate at the mouth of the well."

These leases were all "bought" *i.e.,* assigned to defendant Glavin subject to the retained interest of the original lessors.

Thereafter Glavin sold part of his rights in the Flaugher lease to the Pecars for $12,000, and a one-half interest each of part of his interest in the Howell lease to the Detwilers and the Bryants for $6,000 each. None of the foregoing is disputed. However, it is the inducements to purchase alleged to have been made by defendant to all plaintiffs that give rise to the suits which were brought. The plaintiffs claim that defendant falsely, fraudulently and knowingly represented that Michigan Consolidated Gas Company was willing and able to pay plaintiffs twice their purchase price for the leases. This was represented to be so because certain geological conditions were said to have existed which would in fact mandate purchase by Michigan Consolidated. Since the actions were dismissed on motion, and no testimony was taken, it does not appear why defendant was so altruistically disposed toward the purchasing plaintiffs. In any event, Michigan Consolidated didn't purchase or evidence any interest in purchasing the "indispensable" leases and plaintiffs brought suit.

The Pecars began one action in June of 1960. The other plaintiffs, together with the Pecars, began actions December 26, 1963. The disposition of the first Pecar suit and its effect upon the present appeal will be discussed later herein. The actions begun in 1963 were brought one day prior to the running of the general 6-year statute of limitations.[2] Plaintiffs had theretofore rescinded the contracts of purchase by formally executed reassignments and had demanded return of the purchase price. The complaints alleged fraudulent misrepresentation of material facts, reliance thereon and consequent damage. The responsive pleadings were affidavit-

2 CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605). For current provisions see revised judicature act PA 1961, No 236, § 5813 (CLS 1961, § 600.5813 [Stat Ann 1962 Rev § 27A.5813]).—REPORTER.

supported motions for accelerated judgment. The affidavits raised the ban of the 2-year statute of limitations contained in the blue sky law,[3] and in the case of the Pecars the plea of *res judicata*, as earlier mentioned. The theory of the defendants as to the limitation of action defense is that the instruments vesting in plaintiffs, their interests in the leases were "units or shares in an oil, gas or mining lease" or an "investment contract."

We set forth the relevant statutory provisions:[4]

"The term *'security'* or 'securities' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, preorganization certificate or preorganization subscription, transferable certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest, *units and/or shares in an oil, gas or mining lease, oil or gas well,* collateral trust certificate, any transferable share, *investment contract,* or beneficial interest in or title to property or profits, or any other instrument commonly known as security, or warrant or right to subscribe to or purchase any of the foregoing. * * *

"Sec. 20. Every sale or contract for sale of *any security,* not accepted for filing or otherwise exempt under this act or made contrary to any order of the commission, or made contrary to any provision of this act, shall be voidable at the election of the purchaser, and the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought

---

3 CL 1948, § 451.120 (Stat Ann 1964 Rev § 19.760).

4 CLS 1954, § 451.102(c) (Stat Ann 1953 Cum Supp § 19.742[c]): CL 1948, § 451.120 (Stat Ann 1964 Rev § 19.760).

under this section: Provided, *That no action shall be brought for the recovery of the purchase price after 2 years from the date of such sale or contract for sale."* (Emphasis supplied.)

The learned trial judge agreed with defendant and in a terse opinion held:

"The question before the court is whether the two-year statute of limitations established by CL 1948, § 451.120 (Stat Ann 1964 Rev § 19.760) controls. Admittedly, if the statute does control, the two-year period has expired and the suit is barred.

"The declaration on the case was filed more than three-and-a-half years after the purchase of the oil or gas interest, but plaintiffs contend the statute does not apply, claiming that the lease of the plaintiffs is not a security as defined by the statute.

"The court is of the opinion that the leasehold interest does come within the meaning of the statute in this case. The oil and gas lease was bought as an investment by plaintiffs, and the court feels that the two-year statute will apply."

Plaintiffs contrariwise argue that the leases were interests in land and cite venerable precedent in support thereof. Further authority is furnished from other States that the interests of the plaintiff were not "securities" within the meaning of similar statutes. We do not find the 2 theories mutually exclusive. Irrespective of whether the instruments were, as urged by defendants, "units or shares" in a gas and oil lease or an "investment contract" requiring filing with the commission is not controlling. The statute was not enacted for defendant's benefit. It was enacted "to prevent deception in the purchase of securities." See *Eichbauer* v. *United States Fidelity & Guaranty Co.,* 278 Mich 674, 680. Its purpose was not to deprive plaintiffs of an existing cause of action, but to create a statutory remedy for

those to whom sales were made in violation of the
act. As this Court mentioned in *Eichbauer,* at p 683:

"The statutory right of rescission is conferred,
irrespective of whether the sale could be avoided
under principles of common-law fraud."

The Court there clearly recognized that the
common-law action for fraud was not abolished by
the statute. The remedies are different in essence.
The statutory remedy has naught to do with fraud-
ulent representations, reliance, or even consequent
damage. It merely gives the purchaser the option
of making his purchase voidable when the statute is
not observed. The common-law remedy survives
the statute and retains the necessity of proof of the
elements of that cause of action. As to plaintiffs
Bryant and Detwiler we hold the trial court erro-
neously concluded that the statutory remedy was
exclusive and thus mandated bringing the actions
thereunder. This precise point was strongly urged
by plaintiffs' counsel in argument on the motion.

As to plaintiffs Pecar, further discussion must be
had. In 1960, they started an action by summons and
subsequent declaration alleging virtually the same
cause of action they set out in their 1963 complaint.
Judge Gilmore in that case granted the motion to
dismiss filed under the former practice and upon the
same ground as he relied upon in the motion for
accelerated judgment. Plaintiffs appealed. This
Court dismissed the appeal for failure to comply
with the court rules relating to the preparation of
the appendix. See *Pecar* v. *Glavin,* 367 Mich 483.
Reference to the record in that case in the circuit
court of Wayne county shows no opinion was handed
down. The only docket entries which show precisely
what was adjudicated by Judge Gilmore are the dec-
laration, the motion to dismiss, the reply thereto and
the trial court's order. The motion was based only

upon the 2-year limitation in the quoted statute. The reply thereto specifically set forth that the action was not brought under the statute. The order provides only that "the motion to dismiss said cause having come on regularly to be heard * * * ordered that said motion be and is hereby granted and that said cause stand dismissed."

The rule in this State relating to the bar to an action on the basis of former adjudication has always been that in order to be a bar the issue and judgment must be on the merits. It is clearly set forth in *Leib* v. *Bostwick*, 256 Mich 277, at p 279:

"The doctrine of *res judicata* does not apply to a decision which was not rendered on the merits of the questions involved."

This holding is reaffirmed with additional citations in *Rogers* v. *Detroit Automobile Inter-Insurance Exchange*, 275 Mich 374, pp 380, 381. In that case, after citing *Leib, supra*, and other cases, the Court noted "Many other cases might be cited to like effect."

Judge Gilmore's unreversed 1960 judgment of dismissal constitutes a judicial determination (whether right or wrong at this time is immaterial) that the Pecars' declaration attempted to assert a cause of action for rescission under the blue sky law, but that such cause of action was barred by that law's two-year limitation period. That judgment of dismissal did not preclude the Pecars from proceeding, as they have done here, to seek their common-law remedy as to which the general six-year statute of limitations is applicable. Thus, dismissal of the Pecars' prior suit under the blue sky law is not a bar to their present action under the common law.

We do not pass upon the question of whether the leases were securities within the meaning of the statute because under this disposition of the case it

is not necessary to decision. Further, the involved commission is not a party hereto and we do not have the benefit of its position or briefing.

The order granting defendant's motion to dismiss in the 3 consolidated cases is vacated and the case is remanded to the circuit court. Appellants may tax costs.

Dethmers and Souris, JJ., concurred with O'Hara, J.

Adams, J. (*concurring in reversal*). While I agree with Justice O'Hara that in this case the plaintiffs had at their option two causes of action—one under the statute and the other at common law—neither one of which is exclusive, I am unable to agree with his analysis of the purport or legal effect of the proceedings in the first *Pecar Case*.[1]

One point of departure is in our view as to what Judge Gilmore determined in that case. Plaintiffs pled a simple common-law cause of action for misrepresentation and rescission. Defendants moved to dismiss because the plaintiffs' alleged cause of action was within the limitation of the two years contained in section 20 of the blue sky law (CL 1948, § 451.120 [Stat Ann 1964 Rev § 19.760]).[2] It is important to remember that at the time plaintiffs filed their first lawsuit the two-year statute of limitations applicable to the statutory cause of action had already run. While plaintiffs' attorney had some difficulty with this lawsuit, I think this Court can take note of the fact that normally an attorney does not file suit on a claim outlawed by a statute of limitations, especially if there is available a rem-

---

[1] *Pecar v. Glavin*, 367 Mich 483.—Reporter.
[2] Repealed and superseded by PA 1964, No 265 (CL 1948, § 451.501 *et seq.* [Stat Ann 1965 Cum Supp § 19.776(101) *et seq.*]).—Reporter.

edy as to which the statute of limitations has not run. Furthermore, plaintiffs immediately asserted:

"This suit was not brought under or for violations of the blue sky law.   *   *   *

"This lease purchased by plaintiffs is exempt from the blue sky law."

There was thereby put in issue in the first lawsuit the question as to whether or not the statutory remedy was plaintiffs' exclusive remedy.

The order of dismissal merely states:

"Said motion be and is hereby granted and that said cause stand dismissed."

I interpret this order to mean that the trial judge found plaintiffs had only one cause of action—a statutory one—and that said cause of action was barred by the two-year statute of limitations.

Plaintiffs Pecar apparently placed a similar construction upon the judgment because they sought a reversal by appeal to this Court. See *Pecar* v. *Glavin,* 367 Mich 483. That appeal never reached the merits of the controversy. It was dismissed simply because of the failure of the appellants to conform to the Michigan Court Rules and to bring before this Court all of the information the Court deemed necessary to pass upon the merits of the case. Even so, the effect of that appeal was to affirm the holding of the trial judge with regard to the law insofar as Pecars were concerned.

Nothing daunted, one day before the running of the six-year statute of limitations, plaintiffs again filed suit against the defendant, again alleging the common-law action for misrepresentation and rescission. Defendant again moved for judgment asserting that plaintiffs' claim was not sued upon within the two-year requirement of the statute and that, therefore, plaintiffs' cause of action was barred by

the limitation in the statute. This time the trial judge's judgment was accompanied by an opinion in which he said:

"The question before the court is whether the two-year statute of limitations established by CL 1948, § 451.120 (Stat Ann 1964 Rev § 19.760) controls. Admittedly, if the statute does control, the two-year period has expired and the suit is barred.

"The declaration on the case was filed more than three-and-a-half years after the purchase of the oil or gas interest, but plaintiffs contend the statute does not apply, claiming that the lease of the plaintiffs is not a security as defined by the statute.

"The court is of the opinion that the leasehold interest does come within the meaning of the statute in this case. The oil and gas lease was bought as an investment by plaintiffs, and the court feels that the two-year statute will apply."

If there could be any possible doubt as to what Judge Gilmore held in the first *Pecar Case*—I do not agree that there is—it is resolved and clarified by his holding in the second Pecar lawsuit.

Upon such a record I am unable to agree with Justice O'HARA's conclusion that:

"Judge Gilmore's unreversed 1960 judgment of dismissal constitutes a judicial determination (whether right or wrong at this time is immaterial) that the Pecars' declaration attempted to assert a cause of action for rescission under the blue sky law, but that such cause of action was barred by that law's two-year limitation period. That judgment of dismissal did not preclude the Pecars from proceeding, as they have done here, to seek their common-law remedy as to which the general six-year statute of limitations is applicable. Thus, dismissal of the Pecars' prior suit under the blue sky law is not a bar to their present action under the common law."

Both at the time of determination of the first lawsuit and of the second, Judge Gilmore, of necessity, had to determine whether or not the statutory remedy was exclusive. If he determined that it was, he also as a part of that determination found that the plaintiffs did not have a common-law cause of action. He could not make the one determination without making the other.

Had plaintiffs [Pecar] succeeded in obtaining a decision on the merits upon their first appeal to this Court, they would now be in the same position as Detwiler and Bryant. Because of a technical failure of that appeal, they are, in my opinion, barred under the doctrine of *res judicata* by a valid but erroneous judgment of the trial court in the first *Pecar Case. Hitchcock* v. *Pratt,* 51 Mich 263, 267; *Cummerford* v. *Paulus,* 66 Mich 648, 653; *Dalton* v. *Mertz,* 197 Mich 390, 393; *Henry* v. *Henry,* 362 Mich 85, 89; *Gursten* v. *Kenney,* 375 Mich 330, 335.

The first Pecar appeal was dismissed because of the failure to provide this Court with copies of the leases involved in the lawsuit, it being believed by the Court at that time that examination of the leases was essential to determination of the plaintiffs' appeal. Upon this second appeal, it is the determination of the Court—with which I agree—that the existence of the statutory remedy does not affect the common-law remedy and that it is not necessary in order to decide this case to determine whether the leases fall under the provisions of the statute.

Ironically, therefore, plaintiffs were thrown out of court upon their first appeal for a technical failure to supply materials to this Court which upon this second appeal it is determined were unnecessary. Under such circumstances, to apply the doctrine of *res judicata* would, in my opinion, result in a miscarriage of justice. For that reason, under the pow-

ers of this Court provided by GCR 1963, 865.1(7)
(see, also, *Bender v. Zoba,* 376 Mich 237), I would
treat this present appeal as being in the nature of a
rehearing of the first *Pecar Case* and would reverse
and remand for a new trial.

Costs to appellants.

T. M. KAVANAGH, C. J., and KELLY, BLACK, and
SMITH, JJ, concurred with ADAMS, J.